**COGBURN LAW OFFICES**
ANDREW L. REMPFER, ESQ.
Nevada Bar No. 8628
alr@cogburnlaw.com
DAVID L. LANGHAIM, ESQ.
Nevada Bar No. 12425
dlanghaim@cogburnlaw.com
RYAN H. DEVINE, ESQ.
Nevada Bar No.: 12953
rdevine@cogburnlaw.com
2879 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
(702) 384-3616
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CRAIG GAMBLE, an individual; MICHAEL SIMMONS, an individual; RICHARD CALDWELL, an individual, on behalf of themselves and all others similarly situated as referenced herein,<br><br>Plaintiffs,<br><br>vs.<br><br>BOYD GAMING CORPORATION, a Nevada corporation; DOES I through V, inclusive; and ROE corporations I through V, inclusive,<br><br>Defendants. | Case No: 2:13-cv-01009-JCM-PAL<br><br>**FIRST AMENDED COMPLAINT** |

**FIRST AMENDED COMPLAINT**

Plaintiffs CRAIG GAMBLE, MICHAEL SIMMONS and RICHARD CALDWELL ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through Cogburn Law Offices, hereby allege and complain against BOYD GAMING CORPORATION, ("Defendant"), as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343(3) as the controversy arises under the laws of the United States. Specifically, the claims arise under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et. seq.* (FLSA).

2. Venue is proper in the District of Nevada (and its unofficial Southern District) because Defendant Boyd Gaming Corporation is a Nevada-based corporation with its principal place of business in Las Vegas, Nevada.

## GENERAL ALLEGATIONS

3. Plaintiffs are, or formerly were, bartenders, *i.e.*, employees not exempt from the overtime provisions of the FLSA, generally employed in Defendant's food and beverage division.

4. Defendant Boyd Gaming Corporation is a Nevada corporation that, at all times relevant, performed business in the states of Illinois, Indiana, Iowa, Kansas, Louisiana, Mississippi, New Jersey and Nevada.

5. Defendant operates 21-wholly owned gaming entertainment properties.

6. Gamble, is and was at all relevant times a resident of Clark County, Nevada.

7. Plaintiffs Craig Gamble, Michael Simmons and Richard Caldwell (collectively, "Plaintiffs") bring these claims individually and on behalf of all non-exempt bartenders subject to Defendant's time-and-attendance practices and policies.

8. Plaintiffs allege for themselves and others similarly situated, Defendant maintained a uniform corporate policy that forced non-exempt employees – in this case bartenders – to work off-the-clock both before and after their shifts. FLSA collective members worked overtime and Defendants failed to record and maintain time records of the hours worked as required by law.

9. Defendant's practices violated and continue to violate the FLSA. The collective action claims are for overtime compensation, liquidated damages, and/or interest, and attorneys' fees and costs, under the FLSA, 29 U.S.C. §§ 207 and 216(b).

10. Defendant willfully committed, ordered, directed, supervised, allowed, planned, ratified, concealed, organized, or otherwise participated in the unlawful acts complained of herein.

# PARTIES

11. Gamble was employed by Defendant as a "bartender" in Clark County, Nevada for twelve years at its Orleans property. Gamble regularly worked in excess of 40 hours per week and 8 hours per day, but failed to receive all minimum wages, including overtime compensation to which he was entitled for hours worked in excess of 40 hours per week and/or 8 hours per day.

12. Simmons was employed by Defendant as a bartender in Clark County, Nevada for fourteen years at its Orleans property. Simmons regularly worked in excess of 40 hours per week and 8 hours per day, but failed to receive all minimum wages, including overtime compensation to which he was entitled for hours worked in excess of 40 hours per week and/or 8 hours per day.

13. Caldwell is employed by Defendant as a bartender at its property known as the "Gold Coast Hotel & Casino". Caldwell regularly worked and works in excess of 40 hours per week and 8 hours per day, but failed to receive all minimum wages, including overtime compensation to which he was entitled for hours worked in excess of 40 hours per week and/or 8 hours per day.

14. At all times herein, Defendant was Plaintiffs' "employer" and thus subject to the FLSA.

15. By filing this Complaint, each of the named Plaintiffs consent to sue with respect to each such Plaintiff's FLSA claim for relief against Defendant pursuant to § 216(b) of the FLSA and hereby seek relief under that provision. Hundreds of other similarly situated non-exempt employees may elect to join this collective action if given proper notice of the pendency of the action and an opportunity to participate by "opting in". Consents to Sue on behalf of additional FLSA Collective Members may be filed as this litigation progresses.

16. Defendant Boyd Gaming Corporation is, and at all relevant times was, a Nevada corporation conducting business in the State of Nevada and Clark County, Nevada.

17. The true names and capacities whether individual, corporate, associate or otherwise of Defendants named herein as DOES I through V, inclusive, and ROE CORPORATIONS I through V, inclusive are unknown to Plaintiffs. Said DOE and ROE

Defendants are responsible for damages suffered by Plaintiffs. Therefore, Plaintiffs sue said Defendants by such fictitious names. Plaintiffs will ask leave to amend this Complaint to show the true names and capacities of each DOE and ROE Defendants at such time as the same has been ascertained.

## GENERAL FACTUAL ALLEGATIONS

18. Plaintiffs bring their claim for relief for violation of the FLSA as an "opt-in" collective action pursuant to § 216(b) of the FLSA on behalf of all persons who were, are or will be employed by Defendant as non-exempt employees subject to Defendant's wage-and-hour practices because they were both non-exempt employees, subject to Defendant's general time-and-attendance policies.

19. Those time and attendance policies and practies required Plaintiffs, and all others similarly situated as bartenders, to clock-in at ":53" minutes before their scheduled shift and clock-out no later than ":07", irrespective of whether they had finished their job-related tasks necessary to finish their day, such as performing cash-out procedures regarding counting and verifying the money they received from customers during the day. Similarly, other non-exempt employees were also required to show up early, work off-the-clock and perform pre-shift work off-the-clock.

20. On average, Plaintiffs, and all others similarly situated, worked approximately 30-45 minutes "off the clock" per shift.

21. Generally, these named Plaintiffs were responsible for having to account for money (cash, credit receipts, tips, casino chips, i.e., any form of money) as part of their job duties, which included but was not limited to having a cash drawer, till, bank or some other item for which they – or someone on their behalf – had to count the money at the end of the shift. Plaintiffs had to ensure the cash drawer, till, bank, etc., balanced, *i.e.*, equaled the same as the amount they were given and the amount they gave back to Defendant at the end of the shift to ensure there was neither a surplus or shortage.

22.     On average, these named Plaintiffs and all others similarly situated performed 30-45 minutes of off-the-clock work related to both counting their cash drawers as well as performing pre- and post-shift tasks.

23.     Upon information and belief, Defendant's time-and-attendance policies of requiring bartenders to clock-in and clock-out at the ":53" and ":00" applied uniformly, across all 21 of its gaming properties throughout the United States.

24.     Upon information and belief, Defendant's time-and-attendance policies were based on a common practice, policy or scheme that resulted in all non-exempt bartenders, across all 21 of its gaming properties, being forced to work off-the-clock an average of 30-45 minutes per shift.

25.     Defendant's violations of the FLSA were intentional because several bartenders had or have come forward to complain about these off-the-clock practices many times over the years and Defendant has failed to remedy the violations.

26.     Some bartenders were told by managers they would be terminated for any complaints about being forced to work off-the-clock.

27.     This problem – working off-the-clock – has and still occurs at all of Defendant's properties and, upon information and belief, is part of a company-wide practice to deter overtime and thus decrease all of its exempt bartenders' compensation throughout the United States.

28.     Defendant was, and is, aware of the problem but has failed to take any steps to voluntarily remediate the issue by compensating Plaintiffs and all others similarly situated.

29.     Defendant's conduct was intentional, purposefully designed to deprive Plaintiffs, and all others similarly situated from overtime wages owed.

30.     Questions of law and fact common to the FLSA Collective Members as a whole include, but are not limited to, the following:

    a.     Whether Defendant unlawfully failed and continues to fail to pay minimum wages and overtime compensation in violation of the FLSA;

  b. Whether Defendant's failure to pay overtime to its non-exempt FLSA Collective Plaintiffs was willful within the meaning of the FLSA;

  c. Whether Defendant failed and continues to fail to maintain accurate records of actual time worked by the FLSA Collective Members and prospective FLSA Collective Members;

  d. Whether Defendant failed and continues to fail to maintain accurate records of actual time worked by the FLSA Collective Plaintiffs and prospective FLSA Collective Members;

  e. Whether Defendant failed and continues to fail to provide accurate wage statements itemizing all actual time worked and wages earned by the FLSA Collective Plaintiffs and prospective FLSA Collective Members.

31. Plaintiffs and FLSA Collective Members are similarly situated, have substantially similar job requirements, pay provisions, and are subject to Defendant's common practice, policy or plan of refusing to pay overtime in violation of the FLSA and/or requiring bartenders to work-off-the-clock.

32. Plaintiffs' Claims for Relief for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to § 216(b) of the FLSA, for all claims asserted by the Plaintiffs and the FLSA Collective Members (FLSA claims) because the claims of the Plaintiffs are similar to the claims of the members of the prospective FLSA Collective Members.

33. While the exact number of FLSA Collective Members is unknown to Plaintiffs at the present, based on information and belief, there are more than 500 such members. Thus, a collective action is the most efficient mechanism for resolution of the FLSA Collective Members' claims.

34. The FLSA Collective Members, on behalf of whom Plaintiffs bring this "opt-in" action, are similarly situated because they have been or are employed in similar positions and were subject to the similar unlawful practices as the individually-named Plaintiffs. The number

and identify of other Plaintiffs yet to opt-in and consent to be a Plaintiff may be determined from the records of Defendant and potential Plaintiffs may be notified of the pendency of this action utilizing the payroll records of Defendant. At all times during the FLSA Collective Period, all of the FLSA Collective Members were employed in the same or similar job as the Plaintiffs and were paid in the same manner and under the same standard employment procedures and practices as Plaintiffs.

35. During the FLSA Collective Period, Defendant was fully aware that Plaintiffs and FLSA Collective Members were working uncompensated overtime.

36. Defendant's violations of the FLSA, § 207, were repeated, intentional and willful.

37. The Plaintiffs and FLSA Collective Members have been damaged by Defendant's FLSA §207 violations.

38. Pursuant to §§ 207(a) and 216(b), Defendant is liable to Plaintiffs and the FLSA Collective Members for the full amount of all their unpaid wages, including overtime, plus an additional equal amount as liquidated damages, plus the attorneys' fees and costs of the Plaintiffs and FLSA Collective Members who affirmatively "opt-in" to this collective action.

39. In addition, an action under § 216(b) is superior to other available methods for the fair and efficient adjudication of this controversy since the damages suffered by the individual members of the FLSA Collective Action may be relatively small, and the expense and burden of the individual redress would make it impossible for such FLSA Collective Members to individually redress the harms.

40. Moreover, because of the similarity of the FLSA Collective Members' claims, individual actions would present the risk of inconsistent adjudications, subjecting both employees and Defendant to incomparable standards of conduct.

41. Plaintiffs are currently unaware of the identities of all the FLSA Collective Members. Accordingly, Defendant should be required to provide Plaintiff a list of all persons, inclusive of phone numbers and addresses of all persons employed by Defendants since January 2009 that were non-exempt employees subject to Defendant's time-and-attendance policies

requiring them to clock in and out at the intervals stated above but nonetheless required to continue to perform off-the-clock work for which they did not receive overtime compensation. That would allow FLSA Collective Members notice of the pendency of this action and an opportunity to make an informed decision about whether to participate in it.

### FIRST CLAIM FOR RELIEF
### (Violation of the Fair Labor Standards Act – Wages on Behalf of the Named Plaintiffs and All Others Similarly Situated)

42. Plaintiffs repeat and reallege and incorporate by reference the allegations set forth above as though fully stated herein.

43. Each of the Plaintiffs identified in paragraphs 11 through 15 above consents to sue in this action pursuant to § 216(b) of the FLSA. Additional potential FLSA Collective Members may execute and file forms consenting to "opt-in" and joining as Plaintiffs in this collective action.

44. This claim arises from Defendant's violation of the FLSA, 29 U.S.C. § 201, et seq., for its failure to pay overtime wages to Plaintiffs and all others similarly situated for all time worked in excess of forty (40) hours in individual work weeks.

45. At all times material hereto, Plaintiffs were employed by Defendant as an "employee" within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

46. At all times relevant, Plaintiffs, and all others similarly situated, were employed by Defendant in non-exempt positions entitled 1.5 times their regularly rate in overtime wages for all hours worked over 40 in a week pursuant to 29 U.S.C. § 207.

47. Plaintiffs, and all others similarly situated, were subject to a company-wide policy that purposefully, or alternatively negligently, deprived them overtime wages for at least the past three years for off-the-clock work performed that benefited Defendants.

48. Upon information and belief, this practice of forcing bartenders to work off-the-clock was a common practice throughout all of Defendant's properties.

49. On average, Plaintiffs, and all others similarly situated, have worked from 30-45 minutes of off-the-clock overtime for Defendant in the past three years.

50.     Defendant did not compensate Plaintiffs and those similarly situated at a rate of one-and-a-half times their regularly hourly rate of pay for all time worked in excess of forty (40) hours in individual workweeks, as required by the FLSA.

51.     Defendant's refusal and failure to pay lawful wages, including overtime wages, to Plaintiffs and those similarly situated for all time worked in excess of forty (40) hours per week violated 29 U.S.C. § 207.

52.     Defendant acted willfully in violating the FLSA.

53.     Per the FLSA, Plaintiffs, and those similarly situated, seek all available damages including but not limited to wages, liquidated damages, attorneys' fees, punitive damages and costs.

54.     The named Plaintiffs, on their behalf and all others similarly situated who consent in writing to join this action seek, on this First Claim for Relief, a judgment for unpaid overtime wages, unpaid minimum wages (if any), and additional liquidated damages of 100% of any unpaid minimum (if any) and/or overtime wages, with such sums to be determined on an accounting of the hours worked by, and wages actually paid to, the named Plaintiffs and any such other person who consent to join this action. The Plaintiffs also seek an award of attorneys' fees, interest and costs as provided for by the FLSA, as well as punitive damages if viable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.     Designation of this action as a collective action on behalf of the proposed FLSA Collective Members asserting FLSA claims and prompt issuance of the notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Opt-In action, apprizing them of the pendency of this action, and permitting them to timely assert FLSA claim in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and a tolling of the statute of limitations on the FLSA Collective Action Members' claims until the FLSA Collective Members are provided with a reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt-in as Plaintiffs;

2. Designation of Plaintiffs Gamble, Simmons and Caldwell as representatives of the Nationwide FLSA Collective Members;

3. A declaratory judgment that the practices complained of are unlawful under the FLSA, §§201 et. seq.;

4. An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all other persons acting in concert with it, from engaging in each of the unlawful acts, policies, practices, etc., set forth herein;

5. An award of damages, including liquidated and exemplary damages and waiting time penalties and other statutory penalties;

6. Costs of this action, including reasonable attorneys' fees and expert fees;

7. Pre-Judgment and post-Judgment interest as provided by law;

8. Such other and further legal and equitable relief as this Court may deem necessary, just and proper

**RENEWED JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States Constitution, Plaintiffs hereby renew the Demand for Jury Trial they filed contemporaneous upon filing the original Complaint in Clark County, Nevada.

Dated this 11th day of June 2013

Respectfully Submitted By:

COGBURN LAW OFFICES

By _____
ANDREW L. REMPFER, ESQ.
DAVID L. LANGHAIM, ESQ.
RYAN H. DEVINE, ESQ.
*Attorneys for Plaintiffs*