**COGBURN LAW OFFICES**
ANDREW L. REMPFER, ESQ.
Nevada Bar No. 8628
alr@cogburnlaw.com
BROOKE A. BOHLKE, ESQ.
Nevada Bar No.: 9374
dlanghaim@cogburnlaw.com
RYAN H. DEVINE, ESQ.
Nevada Bar No.: 12953
rdevine@cogburnlaw.com
2879 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
(702) 384-3616
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CRAIG GAMBLE, an individual; MICHAEL SIMMONS, an individual; RICHARD CALDWELL, an individual; KATHY BELMONTE, an individual; MARIA HIGH, an individual; SALVADOR HERNANDEZ, an individual, on behalf of themselves and all others similarly situated as referenced herein, <br><br> Plaintiffs, <br><br> vs. <br><br> BOYD GAMING CORPORATION, a Nevada corporation; DOES I through V, inclusive; and ROE corporations I through V, inclusive, <br><br> Defendants. | Case No: 2:13-cv-1009-JCM-PAL <br><br> And Consolidated Case Nos.: <br><br> (1) 2:13-cv-01043-JCM-PAL; <br> (2) 2:13-cv-01801-JCM-PAL <br><br> **MASTER SECOND AMENDED COMPLAINT** |

Plaintiffs CRAIG GAMBLE, MICHAEL SIMMONS, RICHARD CALDWELL, KATHY BELMONTE, MARIA HIGH, and SALVADOR HERNANDEZ, (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their law firm of Cogburn Law Offices, hereby allege and complain against BOYD GAMING CORPORATION, ("Boyd" or "Defendant") as follows:

**GENERAL ALLEGATIONS**

1. Plaintiffs, and all others similarly situated, are currently and/or formerly employed by Boyd as "non-exempt" employees pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. ("FLSA").

2. Plaintiffs, on behalf of themselves and all others similarly situated, allege Boyd has or had informal and/or formal policies, programs, practices and/or scheme(s) for years that automatically and intentionally rounded-down its non-exempt employee's working hours to the lower quarter hour. Boyd's practice exclusively benefits and enriches Boyd to its employees' detriment by resulting in the potential loss of tens (and possibly hundreds) of millions of dollars from its employees' wages.

3. Plaintiffs, on behalf of themselves and all others similarly situated, allege Boyd has or had informal and/or formal policies, programs, practices and/or scheme(s) for years that required current and/or former non-exempt employees to work "off-the-clock" for as much as 30-45 minutes per shift.

4. Plaintiffs, on behalf of themselves and all others similarly situated, were affected by the formal and/or informal policies, program, practice and/or scheme generally discussed in paragraphs 2 and 3.

5. Plaintiffs, and all others similarly situated, file this suit to expose Boyd's illegal wage-and-hour practices to recoup the wages they are owed, as well as to recoup the wages owed to thousands of current and former Boyd employees who suffered under Boyd's illegal wage-and-hour policies, program(s), practice(s) and/or scheme(s) generally discussed in paragraphs 2 and 3.

6. Plaintiffs' complaints below form a larger complaint, expressed by current and former employees, that Boyd's illegal wage-and-hour policies, program(s), practice(s) and/or scheme(s) has and/or have occurred nationwide at Boyd's 22 wholly-owned gaming entertainment properties and, upon information and belief, affected all of Boyd's non-exempt employees.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1343(3), as the controversy arises under the laws of the United States. The claims arise under the FLSA, 29 U.S.C. § 201 et. seq. Supplemental jurisdiction is appropriate pursuant to 28 U.S.C. §

1   1367 for Plaintiffs' state law claims arising under N.R.S. § 608 et. seq. because they form part of

2   the same case or controversy as alleged below.

3       8.    Venue is proper in the District of Nevada (and its unofficial Southern District)

4   pursuant to 28 U.S.C. § 1391(b) et. seq. because Boyd is a Nevada-based corporation with its

5   principal place of business in Las Vegas, Nevada.

## THE PARTIES

7       9.    Boyd is a Nevada-based corporation with its principal place of business in Las

8   Vegas, Nevada.

9       10.    Boyd conducts business in the states of Illinois, Indiana, Iowa, Kansas, Louisiana,

10   Mississippi, New Jersey and Nevada via its 22 wholly owned gaming/entertainment properties.

11       11.    Upon information and belief, Boyd employs non-exempt employees within the

12   scope of the classes discussed below at all of its 22 wholly owned gaming/entertainment

13   properties.

14       12.    Boyd employed Plaintiffs Gamble, Simmons, Belmonte, High and Hernandez as

15   non-exempt employees at the Orleans Hotel & Casino. Gamble and Simmons were employed as

16   Bartenders. Belmonte and High were employed as Cocktail Waitresses. Hernandez was

17   employed as a Banquet Server.

18       13.    Caldwell is currently employed by Boyd as a non-exempt, Bartender, employee at

19   the Gold Coast Hotel & Casino.

20       14.    By filing this Complaint, the named Plaintiffs consent to sue with respect to each

21   claim for relief against Boyd pursuant to § 216(b) of the FLSA and hereby seek relief under that

22   provision.

23       15.    Hundreds and potentially thousands of other similarly situated non-exempt

24   current and/or former employees may elect to join this collective action if given proper notice of

25   the pendency of the action and an opportunity to participate by "opting in". Consents to Sue on

26   behalf of additional Class Members may be filed as this litigation progresses.

27       16.    At all times herein, Boyd was Plaintiffs' "employer" and thus subject to the

28   FLSA.

COGBURN LAW OFFICES
2879 St. Rose Pkwy., Suite 200
Henderson, Nevada 89052
(702) 384-3616 FAX: (702) 943-1936

17. Boyd's practices described below violated and continue to violate the FLSA. The collective action claims are for regular, minimum (if any) and/or overtime compensation, liquidated damages, and/or interest, and attorneys' fees and costs, under the FLSA, 29 U.S.C. §§ 207 and 216(b).

18. The collective action claims include claims filed pursuant to Nevada's wage-and-hour statutes (NVWH), N.R.S. § 608.

19. The true names and capacities whether individual, corporate, associate or otherwise of Defendant(s) named herein as DOES I through V, inclusive, and ROE CORPORATIONS I through V, inclusive are unknown to Plaintiffs. Said DOE and ROE Defendant(s) are responsible for damages suffered by Plaintiffs. Therefore, Plaintiffs sue said Defendant(s) by such fictitious names. Plaintiffs will ask leave to amend this Complaint to show the true names and capacities of each DOE and ROE Defendant(s) at such time as the same has been ascertained.

**BOYD'S ROUNDING-DOWN OF EMPLOYEES' TIME**

20. Boyd has/had a policy, practice, program and/or scheme of rounding down its current and/or former non-exempt employees' time to the lower quarter hour. For example, if any employee worked 8 hours and 8 minutes in one shift, Boyd would round the employee's time down to 8 hours instead of rounding up to 8.25 hours. Boyd overwhelmingly, if not always, rounds down an employee's time.

21. As a result of Boyd's rounding-down policy, practice, program and/or scheme, Plaintiffs, and all others similarly situated, lose up to 14 minutes of time per shift, and possibly more.

22. Boyd maintains records called "Boyd Gaming Corp. Punch Detail Reports" showing, among others, two categories: "rounded" and "actual" time.

23. Upon information and belief, Boyd currently employs anywhere from 10,000 to 15,000 non-exempt employees at its 22 wholly-owned properties nationwide.

24. Upon information and belief, all of Boyd's current and/or former non-exempt employees nationwide were affected by Boyd's company-wide policy, program, practice and/or scheme to "round down" employee's time, as shown by Boyd's Punch Detail Reports.

### BOYD'S REQUIREMENT EMPLOYEES WORK "OFF-THE-CLOCK"

25. Upon information and belief, Boyd has a policy, program, practice and/or scheme requiring its current and/or former non-exempt employees to work "off-the-clock".

26. Generally, the named Plaintiffs worked anywhere from 30 to 45 minutes "off-the-clock" per shift. This means, after clocking-out of Boyd's official time clock system, Plaintiffs, and all others similarly situated, would work an additional period of time from 30 to 45 minutes that Boyd never documented and for which it never compensated the Plaintiffs and/or those similarly situated.

27. Upon information and belief, Boyd currently employs anywhere from 10,000 to 15,000 non-exempt employees at its 22 wholly owned properties nationwide.

28. Upon information and belief, all of Boyd's current and/or former non-exempt employees nationwide were affected by Boyd's company-wide policy, program, practice and/or scheme to requiring them to work "off-the-clock".

### BOYD'S INTENTIONAL FLSA VIOLATIONS

29. Boyd's violations of the FLSA were intentional.

30. Several employees, including Craig Gamble, had or have come forward to complain about these off-the-clock practices.

31. Upon information and belief, other employees have complained of Boyd's "rounding down" employee's time.

32. Boyd has failed and/or refused to remedy the violation(s).

33. Some employees were told by managers they would be terminated for any complaints about being forced to work off-the-clock and/or not receiving the overtime and/or regular wages owed them.

34. Upon information and belief, these problems – working off-the-clock and/or rounding down – have and still occur at all of Boyd's properties nationwide. Upon information

1    and belief, these problems are part of a Boyd's company-wide practice to deter and/or eliminate

2    overtime, thus decreasing all of its non-exempt employees' compensation throughout the United

3    States.

4        35.    Boyd was, and is, aware of these "off-the-clock" and/or "rounding down"

5    problems but has failed to take any steps to voluntarily remediate the issue(s) by properly

6    compensating Plaintiffs and all others similarly situated for the amount of time they actually

7    worked.

## THE POTENTIAL CLASS CLAIMANTS

9        36.    Based on the preceding, Plaintiffs believe the class is defined as follows: All

10   hourly current and/or former non-exempt employees employed by Boyd at anytime during the

11   three years prior to the filing of this Complaint until the date of judgment after trial (herein "the

12   Class Period"), and as further defined below in paragraph 37 and its subparts.

13       37.    The Class is subdivided into four subclasses of similarly situated and typical

14   individuals (collectively, the "Subclasses" or "Subclass members"):

15       a.    **The "Rounded" Subclass:** Boyd has and/or had a policy, practice,

16   program and/or scheme of "rounding" the hours off non-exempt employees' time to the nearest

17   quarter hour. Boyd uses a rounding system that always rounds the minutes down to Boyd's

18   favor, *i.e.*, Boyd rounds down to the lower quarter hour. As a result, the current and/or former

19   employee is/was not compensated for time worked. This is the "rounded" subclass.

20       b.    **The "Off-the-Clock" Subclass**: Boyd has and/or had a policy, practice,

21   program and/or scheme of requiring its non-exempt employees to work "off-the-clock" to

22   perform their work related tasks. As a result, the current and/or former employee is/was not

23   compensated for time worked after the period they officially clocked-out of work. This is the

24   "off-the-clock" subclass.

25       c.    **The "Rounded *and* Off-the-Clock" Subclass:** There exists another

26   subclass: current and/or former non-exempt employees who were subject to *both* policies,

27   practices, programs and/or schemes in 37(a)-(b). These current and/or former employees are

28

entitled regular and/or overtime wages for both violations. This is the "rounded" and "off-the-clock" subclass.

    d.  **The "Wages Due and Owing" Subclass**: All current and/or former employees of Boyd who, at any time during the Class Period, were terminated or otherwise separated from employment, but were not paid wages due and owing upon termination. This is the "wages due and owing" subclass.

  38. Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

    a.  Whether Boyd's has a company-wide policy, practice program and/or scheme to "round down" the time of current and/or former non-exempt Plaintiffs and prospective Class Members;

    b.  Whether Boyd has a company-wide policy, practice program and/or scheme requiring current and/or former non-exempt employees to work "off-the-clock", as that phrase is defined above in paragraph 37(b).

    c.  Whether Boyd unlawfully failed, and continues to fail, to pay its current and/or former non-exempt employees regular wages and/or overtime wages, in violation of the FLSA as to Plaintiffs and prospective Class Members;

    d.  Whether Boyd's failure to pay regular and/or overtime to its current and/or former non-exempt employees was willful within the meaning of the FLSA as it relates to Plaintiffs and prospective Class Members;

    e.  Whether Boyd failed, and continues to fail, to maintain accurate records of actual time worked by Plaintiffs and prospective Class Members;

    f.  Whether Boyd failed, and continues to fail, to provide accurate wage statements itemizing all actual time worked and wages earned by Plaintiffs and prospective Class Members;

  39. Plaintiffs and the prospective Class Members are similarly situated, have substantially similar job requirements, and pay provisions, and are subject to Boyd's company-

wide policy, practice program and/or scheme refusing to pay regular and/or overtime wages in violation of the FLSA.

40. While the exact number of prospective Class Members is unknown to Plaintiffs at the present, based on information and belief, there are more than 5,000 such members and possibly as much as 15,000. The number and identity of other Plaintiff(s) yet to opt-in and consent to be a Plaintiffs may be determined from Boyd's records and potential Plaintiffs may be notified of the pendency of this action utilizing the Boyd's payroll and/or personnel records.

41. An action under § 216(b) is superior to other available methods for the fair and efficient adjudication of this controversy since the damages suffered by the individual members of the FLSA Collective Action may be relatively small, and the expense and burden of the individual redress would make it impossible for such FLSA Collective Members to individually redress each claim asserted.

42. During the FLSA Collective Period, Boyd was fully aware Plaintiffs, and prospective Class Members, were working and/or worked uncompensated regular time, including overtime.

43. Accordingly, Boyd should be required to provide Plaintiffs a list of all persons, inclusive of phone numbers and addresses of all persons employed by Boyd since January 2009 that were non-exempt employees subject to Boyd's time-and-attendance policies requiring them to clock in and out at the intervals stated above but nonetheless required to continue to perform off-the-clock work for which they did not receive overtime compensation. That would allow prospective Class Members notice of the pendency of this action and an opportunity to make an informed decision about whether to participate in it.

### FIRST CLAIM FOR RELIEF
(Violation of the Fair Labor Standards Act – Wages on Behalf of the Plaintiffs, And All Others Similarly Situated In The "Rounded" Subclass)

44. Plaintiffs repeat and reincorporate by this reference the allegations set forth above as though fully stated herein.

45. The named Plaintiffs consent to sue in this action pursuant to § 216(b) of the FLSA. Additional potential Class Members may execute and file forms consenting to "opt-in" and joining as Plaintiffs in this collective action.

46. This claim arises from Boyd's violation of the FLSA, 29 U.S.C. § 201, et seq., for its failure to pay wages, regular, (minimum, if any) and/or overtime wages, to Plaintiffs and all others similarly situated for all time worked, including time worked in excess of forty (40) hours in individual work weeks.

47. Specifically, this claim concerns the named Plaintiffs, and prospective Rounded Subclasses allegations, they were subject to Boyd's policy, programs, practices and/or schemes to "round down" an employee's time to the lower quarter hour, as referenced in paragraphs 20-24, *supra*. This is the "Rounded" subclass referenced in paragraph 37(a), *supra*.

48. Upon information and belief, Boyd's policy, programs, practices and/or schemes to "round down" affected all current and/or former non-exempt Boyd employees company-wide.

49. Plaintiffs, and all others similarly situated, were subject to Boyd's company-wide policy, program, practice and/or scheme that deprived them regular, and/or overtime wages.

50. On average, and upon information and belief, Plaintiffs, and all others similarly situated had up to 14 minutes, and possibly more, time "rounded down" from their pay.

51. Upon information and belief, this practice – automatically rounding down to the lower quarter hour – eliminates hundreds of thousands of minutes from employees' time per year.

52. As a result of eliminating this time, Boyd has effectively "saved" tens of millions – and possibly hundreds of millions – of dollars in employee wages, which Boyd has kept for itself to the detriment of its employees.

53. Plaintiffs will propose a 29 U.S.C. § 216(b) joinder notice for all other similarly situated prospective Rounded Subclass Members

54. Boyd willfully violated 29 U.S.C. § 207.

55. Per the FLSA, Plaintiffs, and those similarly situated, seek all available damages including but not limited to regular, minimum (if any) and overtime wages, liquidated damages,

1  an award of back pay attorneys' fees, punitive damages and costs and double back pay based on
2  Boyd's willful violations of the FLSA.

### SECOND CLAIM FOR RELIEF
### (Violation of the Fair Labor Standards Act – Wages on Behalf of the Plaintiffs, And All Others Similarly Situated In The "Off-the-Clock" Subclass)

56.   Plaintiffs repeat and reincorporate by this reference the allegations set forth above as though fully stated herein.

57.   The named Plaintiffs consent to sue in this action pursuant to § 216(b) of the FLSA. Additional potential Class Members may execute and file forms consenting to "opt-in" and joining as Plaintiffs in this collective action.

58.   This claim arises from Boyd's violation of the FLSA, 29 U.S.C. § 201, et seq., for its failure to pay wages, regular and/or overtime wages, to Plaintiffs and all others similarly situated for all time worked, including time worked in excess of forty (40) hours in individual work weeks.

59.   Specifically, this claim concerns the named Plaintiffs and those similarly situated who were all subject to Boyd's policy, practice, program and/or scheme of requiring its non-exempt employees to work uncompensated "off-the-clock" to perform their work related tasks, as referenced in paragraphs 25-28. This is the "Off-the-Clock" subclass referenced in paragraph 37(b), *supra*.

60.   The named Plaintiffs and prospective Off-the-Clock Subclass members were not compensated for time worked after the period they officially clocked-out of work.

61.   Upon information and belief, Boyd's policy, programs, practices and/or schemes requiring uncompensated "off-the-clock" work affected all current and/or former non-exempt employees company-wide.

62.   Plaintiffs, and all others similarly situated, were subject to Boyd's company-wide policy, program, practice and/or scheme that deprived them regular, minimum (if any) and/or overtime wages.

63.   On average, the named Plaintiffs, and those similarly situated worked anywhere from 30 to 45 minutes of uncompensated "off-the-clock" work.

64. As a result of not compensation the named Plaintiffs, and those similarly situated, for "off-the-clock" work, Boyd has effectively "saved" tens of millions – and possibly hundreds of millions – of dollars in employee wages, which Boyd has kept for itself to the detriment of its employees.

65. Boyd did not compensate Plaintiffs, and those similarly situated, their regular wages and/or overtime wages at a rate of one-and-a-half times their regularly hourly rate of pay for all time worked in excess of forty (40) hours in individual workweeks, as required by the FLSA.

66. Plaintiffs will propose a 29 U.S.C. § 216(b) joinder notice for all other similarly situated prospective Off-the-Clock Subclass Members.

67. Boyd willfully violated 29 U.S.C. § 207.

68. Per the FLSA, Plaintiffs, and those similarly situated, seek all available damages including but not limited to wages, liquidated damages, an award of back pay, attorneys' fees, punitive damages and costs and double back pay based on Boyd's willful violations of the FLSA.

### THIRD CLAIM FOR RELIEF
**(Violation of the Fair Labor Standards Act – Wages on Behalf of the Plaintiffs, And All Others Similarly Situated In The "Rounded *and* Off-the-Clock" Subclass)**

69. Plaintiffs repeat and reincorporate by this reference the allegations set forth above as though fully stated herein.

70. The named Plaintiffs consent to sue in this action pursuant to § 216(b) of the FLSA. Additional potential Class Members may execute and file forms consenting to "opt-in" and joining as Plaintiffs in this collective action.

71. This claim arises from Boyd's violation of the FLSA, 29 U.S.C. § 201, et seq., for its failure to pay wages, regular, minimum (if any) and/or overtime wages, to Plaintiffs and all others similarly situated for all time worked, including time worked in excess of forty (40) hours in individual work weeks.

72. Specifically, this claim concerns the current and/or former non-exempt employees who were subject to **both** policies, practices, programs and/or schemes referenced in paragraphs 20-28 and 37(a)-(b), *supra*. These current and/or former employees are entitled regular,

minimum (if any) and/or overtime wages for both violations. This is the "Rounded and Off-the-Clock" subclass referenced in paragraph 37(c), *supra*.

73. The named Plaintiffs and prospective Rounded and Off-the-Clock Subclass were subject to Boyd's policy, practices, programs and/or schemes alleged in paragraphs 18 through 26, supra, which are reincorporated and realleged here by this reference.

74. Boyd did not compensate Plaintiffs, and those similarly situated, their regular, minimum (if any) wages and/or overtime wages at a rate of one-and-a-half times their regularly hourly rate of pay for all time worked in excess of forty (40) hours in individual workweeks, as required by the FLSA.

75. Plaintiffs will propose a 29 U.S.C. § 216(b) joinder notice for all other similarly situated prospective Rounded and Off-the-Clock class members.

76. Boyd willfully violated 29 U.S.C. § 207.

77. Per the FLSA, Plaintiffs, and those similarly situated, seek all available damages including but not limited to wages, liquidated damages, an award of back pay, attorneys' fees, punitive damages and costs and double back pay based on Boyd's willful violations of the FLSA.

**FOURTH CLAIM FOR RELIEF**
**(Failure to Pay Regular And/Or Overtime Wages in Violation of N.R.S. § 608.010 et. seq. On Behalf of Plaintiffs And All Members of the "Rounded", "Off-the-Clock" and/or "Rounded and Off-the-Clock" Subclasses)**

78. Plaintiffs repeat and reincorporate by reference the allegations set forth above as though fully stated herein.

79. All Nevada-based Plaintiffs, in all subclasses, are equally entitled their regular wages and/or overtime pursuant to Nevada's Wage-and-Hour Laws (NVWH).

80. N.R.S. § 608.016 states an "employee shall pay to the employee wages for each hour the employee works."

81. N.R.S. § 608.018, which applies to Boyd's business, states that an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per week or eight (8) hours per day assuming the employee earns less than 1.5 times the Nevada minimum wage.

82. By failing to pay all Plaintiffs, and all others similarly situated in the "Rounded", "Off-the-Clock" and/or "Rounded and Off-the-Clock", Boyd violated N.R.S. §§ 608.016 and 608.018.

83. Boyd's violations of NVWH were intentional and, as such, the three-year statute of limitation found in N.R.S. § 11.190(3) applies to those claims.

84. Pursuant to N.R.S. § 608.260, Plaintiffs request an order requiring Boyd to make restitution of all lawful wages due to Plaintiffs, and all others similarly situated, in an amount to be proved at trial.

85. Boyd's actions discussed above were willfully, oppressive, fraudulent and malicious, entitling Plaintiffs, and all others similarly situated, punitive damages.

86. Further, Plaintiffs seek all available damages, fees and costs, under N.R.S. § 608.005, *et. seq.* including but not limited to damages for violations of N.R.S. §§ 608.020, or 608.030 and giving Plaintiffs claims against Boyd under N.R.S. § 608.040.

**FIFTH CLAIM FOR RELIEF**
**(Failure to Timely Pay All Wages Due and Owing Upon Termination In Violation of N.R.S. § 608.020 On Behalf of Plaintiffs And All Others Similarly Situated In The "Wages Due and Owing" Subclass)**

87. Plaintiffs repeat and reincorporate by reference the allegations set forth above as though fully stated herein.

88. N.R.S. § 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

89. N.R.S. § 608.040(1)(a-b), in relevant part, imposes a penalty on an employer who fails to pay a discharged or quitting employee "[w]ithin 3 days after the wages or compensation of a discharged employee becomes due; or on the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30-days, whichever is less."

90. N.R.S. § 608.050 grants an "employee lien" to each terminated or laid-off employee for the purposes of collecting compensation owed to them for a period of up to 30 days. The purpose of the lien is to collect the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor, but the employee shall cease to draw such wages or salary 30 days after such default."

91. By failing to pay Plaintiffs, and all others in the "Rounded", "Off-the-Clock" and the "Rounded and Off-the-Clock" subclasses, their wages for all hours worked in violation of state and federal law, Boyd has failed to timely remit these wages.

92. Plaintiffs, and all others similarly situated, are thus owed 30 days of wages pursuant to N.R.S. § 608.140 and 608.040. They are also owed an additional 30 days pursuant to N.R.S. § 608.1404 and 608.050.

93. Pursuant to N.R.S. § 608.260, Plaintiffs request an order requiring Boyd to make restitution of all lawful wages due to Plaintiffs, and all others similarly situated, in an amount to be proved at trial.

94. Further, Plaintiffs seek all available damages, fees and costs, under N.R.S. § 608.005, *et. seq.* including but not limited to damages for violations of N.R.S. §§ 608.020, or 608.030 and giving Plaintiffs claims against Boyd under N.R.S. § 608.040.

95. Boyd's actions discussed above were willfully, oppressive, fraudulent and malicious, entitling Plaintiffs, and all others similarly situated, punitive damages.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class Members, pray for judgment against Boyd as follows:

1. Designation of this action as a collective action on behalf of the proposed FLSA Class Members asserting FLSA claims and prompt issuance of the notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Opt-In action, apprizing them of the pendency of this action, and permitting them to timely assert FLSA claim in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and a tolling of the statute of limitations on the FLSA Class Members' claims until the FLSA Class Members are provided with a reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt-in as Plaintiffs;

2. Designation of the named Plaintiffs as representative of the nationwide FLSA Class Members;

3. A declaratory judgment that the practices complained of are unlawful under the FLSA, §§201 et. seq.;

4. An injunction against Boyd and its officers, agents, successors, employees, representatives and any and all other persons acting in concert with it, from engaging in each of the unlawful acts, policies, practices, etc., set forth herein;

5. An award of damages, including liquidated and exemplary damages and waiting time penalties and other statutory penalties;

6. Costs of this action, including reasonable attorneys' fees and expert fees;

7. Pre-Judgment and post-Judgment interest as provided by law;

8. Such other and further legal and equitable relief as this Court may deem necessary, just and proper.

/ / /

/ / /

/ / /

/ / /

**RENEWED JURY DEMAND**

Each of the original Complaints filed in these cases, including the consolidated actions, contained a Jury Demand. Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States Constitution, Plaintiffs hereby collectively renew their Demand for a Jury Trial.

Dated this 20th day of November 2013.     Respectfully Submitted By:

**COGBURN LAW OFFICES**

By _____
ANDREW L. REMPFER, ESQ.
BROOKE A. BOHLKE, ESQ.
RYAN H. DEVINE, ESQ.
*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I am a resident of the State of Nevada, over the age of eighteen years, and not a party to the within action. My business address is 2879 St. Rose Parkway, #200, Henderson, NV 89052.

On November 20th 2013 I served the within document(s):

**MASTER SECOND AMENDED COMPLAINT**

☐ By **U.S. Mail** a copy of the document(s) listed above to the person(s) at the address(es) set forth below.

X  By **CM/ECF Filing** – with the United States District Court of Nevada, a copy of the Court's notification of e-filing is attached to the hard copy for either faxing, mailing, overnight delivery, and/or hand-delivery.

☐ By **Facsimile Transmission** – the transmission was reported as complete and without error. A copy of the transmission report, properly issued by the transmitting machine, is **attached** to the hard copy. The names and facsimile numbers of the person(s) served are as set forth below.

☐ By **Overnight Delivery** – by depositing a true copy of the same enclosed in a sealed envelope, with delivery fees provided for, in an overnight delivery service pick up box or office designated for overnight delivery, and addressed as set forth below.

☐ By personally delivering a copy of the document(s) listed above to the person(s) at the address(es) set forth below.

**Scott M. Abbott, Esq.**
**KAMER ZUCKER ABBOTT**
**3000 West Charleston Blvd., Suite 3**
**Las Vegas, NV 89102**
**Attorney for Defendant**

**Nancy R. Thomas, Esq.**
**Karen J. Kubin, Esq.**
**Derek F. Foran, Esq.**
**MORRISON & FOERSTER LLP**
**707 Wilshire Boulevard, Suite 6000**
**Los Angeles, CA 90017-3543**
**Attorney for Defendant**

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Andrew L. Rempfer, Esq.
An employee of Cogburn Law Offices