UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CRAIG GAMBLE, et al.<br><br>　　　　　　　　　　Plaintiffs,<br>　v.<br>BOYD GAMING CORPORATION,<br>　　　　　　　　　　Defendant. | Case No. 2:13-cv-01009-JCM-PAL<br>Case No. 2:13-cv-01043-JCM-PAL<br>Case No. 2:13-cv-01801-JCM-PAL<br><br>**ORDER**<br><br>(Mot. Prelim. Approval of Stlmt – Dkt. #245) |

Before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (Dkt. #245). No response to the Motion was filed and the time for filing a response has now run.[1] This proceeding was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and LR IB 1-3 and 1-9.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs Craig Gamble, Michael Simmons, Maria High, Kathy Belmonte, and Richard Caldwell (jointly, "Plaintiffs") filed three separate lawsuits against Defendant Boyd Gaming Corporation on May 9, 2013 (Case No. 2:13-cv-01009-JCM-PAL), June 12, 2013 (Case No. 2:13-cv-01043-JCM-PAL), and October 1, 2013 (Case No. 2:13-cv-01801-JCM-PAL). Plaintiffs alleged claims to recover unpaid wages earned during time rounded-off by Defendant's timekeeping system and time they spent cashing out their banks off-the-clock. Master 2nd Am. Compl. (Dkt. #42) ¶¶ 20–28. Pursuant to a stipulation by the parties, the Court consolidated the lawsuits making the instant case, Case No. 2:13-cv-01009-JCM-PAL, the base file. Nov. 20, 2013 Order (Dkt. #41). The operative complaint in this consolidated action is Plaintiffs' Master Second Amended Complaint (Dkt. #42), which asserts claims for unpaid regular wages and

---

[1] Plaintiffs have also filed a Supplemental Declaration (Dkt. #246) in support of their Motion.

1

overtime wages under the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and applicable Nevada law.

On December 5, 2013, Plaintiffs filed a Motion to Certify Class (Dkt. #44) seeking conditional certification of a collective action. Defendant filed a Motion to Dismiss (Dkt. #46) Plaintiffs' state law claims on December 9, 2013. The Court granted Defendant's motion and dismissed the state law claims. June 9, 2014 Order (Dkt. #93). As a result, the following FLSA claims in the Second Master Complaint remained viable:

> (1) violations of the FLSA for failure to pay wages due to a scheme by the defendant to "round down" employees' time, resulting in the improper calculation of wages and unpaid time; (2) violations of the FLSA for failure to pay wages due to a scheme by defendant to require employees to work "off-the-clock;" (3) violation of the FLSA for those employees who were subject to the defendant's scheme to "round down" and to require "off-the-clock" work.

*Id*. at 2. The Court also granted Plaintiffs' motion in part and conditionally certified a rounding collective consisting of all hourly, non-exempt "employees using the Kronos timekeeping management system," *id*. at 7:1–3, and an off-the-clock collective of "all hourly, non-exempt, cash handling employees at the Orleans and Gold Coast casinos" *Id.* at 8:7–9. The parties were ordered to "meet and confer in order to agree on a mutually acceptable notice." *Id*. at 9:24–25. To facilitate notice to the collectives, Defendant was ordered to provide "the names, last known addresses, and email addresses of all potential class members who performed work for the defendant within the three years prior to the filing of this action." *Id*. at 10:1–3.

On July 11, 2014, the Court approved the parties' stipulated Notice. Stipulation & Order (Dkt. #106). Defendant provided Plaintiffs with a putative class list of almost 28,000 persons on September 10, 2014. *See* Decl. of Michelle R. Fisher, Esq. (Dkt. #245-1) ¶ 11. On September 25, 2014, Plaintiffs distributed the Notice, which stated that the opt-in period would close on November 24, 2014. *Id*. ¶ 12. Excluding the four individuals who initially joined and later withdrew, 2,632 persons submitted consents to join this action. *Id*. Defendants contested the inclusion of approximately 630 individuals, either because they did not work during the relevant timeframe or at the relevant property. *Id*. ¶ 13. After meeting and conferring, the parties agreed that 476 persons did not qualify for the collective and those persons should be dismissed from

this action without prejudice. *Id.* ¶ 15. As a result, the parties agree that 2,158 persons consented to join the action as putative collective action members ("Opt-In Plaintiffs"). *Id.* ¶ 16.

The parties engaged in considerable discovery efforts throughout this action, including written discovery and depositions. *See, e.g.*, *id.* ¶¶ 3–10. For example, the parties exchanged approximately 8,600 pages of documents and 489.13 megabytes of timekeeping and payroll data. *Id.* ¶ 9. Plaintiffs deposed Defendant through five corporate designees. *Id.* ¶ 4. Defendant deposed each of the five named Plaintiffs and 18 of the Opt-In Plaintiffs. *Id.* ¶ 7. Although counsel represents that the parties were able to resolve many of their discovery disputes without the Court's intervention, *id.* ¶ 10, both Plaintiffs and Defendant filed multiple motions to compel, *see* (Dkt. ##128, 228, 233), as well as numerous other motions. Discovery closed on March 9, 2015. *See* Jan. 12, 2015 Order (Dkt. #213). Both parties retained experts and exchanged expert disclosures and reports, and Plaintiffs produced a rebuttal expert report. Fisher Decl. ¶¶ 17–18. On March 4, 2015, the parties agreed to attend mediation without staying the action. *Id.* ¶ 36. However, expert depositions were scheduled to occur during the following week in the event that the parties could not reach a settlement. *Id.* ¶ 20.

After the close of discovery and before dispositive motions were due, the parties participated in a mediation before The Honorable Peter Lichtman (Ret.), a qualified third-party neutral in Los Angeles, California. *Id.* ¶ 37. The motion represents that after over nine hours of negotiations, the parties arrived at and signed a memorandum of understanding containing material terms of their settlement. *Id.* ¶ 37. The parties then reduced the agreement to the Stipulation of Settlement and Release (Dkt. #245-2) (the "Proposed Settlement") (submitted as Mot. Ex. A).

## II.  PRELIMINARY APPROVAL OF SETTLEMENT FOR PLAINTIFFS' FLSA CLAIMS

The FLSA regulates the minimum wages and overtime compensation paid to workers. 29 U.S.C. §§ 206–207; *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1143–44 (9th Cir. 2007). To penalize violations of §§ 206 and 207 of the FLSA, § 216 states that employers are "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as

3

liquidated damages." 29 U.S.C. § 216(b). The FLSA also provides a private right of action enabling workers to maintain a lawsuit against their employer on "behalf of himself or themselves and other employees similarly situated," *i.e.* a collective action. *Id*. *See also Gray v. Swanney-McDonald, Inc.*, 436 F.2d 652, 655 (9th Cir. 1971).

### A. The Proposed Collectives

The FLSA does not define the term "similarly situated" for the purposes of bringing a collective action, and the Ninth Circuit has not yet formulated a test for courts to determine whether putative collective members are similarly situated. *Vasquez v. Coast Valley Roofing*, 670 F. Supp. 2d 1114, 1123 (E.D. Cal. 2009). However, a number of courts, including this one, have adopted a two-step approach for determining whether potential plaintiffs are "similarly situated" for purposes of conditional certifying an FLSA collective. *Kress v. Price Waterhouse Coopers, LLP*, 263 F.R.D. 623, 627 (E.D. Cal. 2009) (noting that district courts in the Ninth Circuit predominantly use a two-tier approach to determine whether a group of employees is similarly situated). At the first, or "notice stage," a court relies "primarily on the pleadings and any affidavits submitted by the parties," to decide whether the potential collective should be conditionally certified and given notice of the action. *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). If the court conditionally certifies a collective and authorizes notice to putative collective members, the parties conduct discovery, after which the employer may move to decertify the class. *Kress*, 263 F.R.D. at 628; *Leuthold*, 224 F.R.D. at 467.

"Even when the parties settle, the court must make some final class certification finding before approving a collective action settlement." *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 471 (E.D. Cal. 2010); *see also Hipp v. Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001); *Goldsby v. Renosol Seating, LLC*, 294 F.R.D. 649, 656 (S.D. Ala. 2013) (noting that a court must decide whether final certification is appropriate and rejecting proposed settlement that did not address final certification). In determining whether to certify or decertify a conditionally certified class, a court makes a factual determination regarding the propriety and scope of the class. *Kress*, 263 F.R.D. at 628; *Leuthold*, 224 F.R.D. at 467. Factors the court considers in making its factual determination include "(1) the disparate factual and employment settings of

1  the individual plaintiffs; (2) the various defenses available to the defendants with respect to the
2  individual plaintiffs; and (3) fairness and procedural considerations." *Murillo*, 266 F.R.D. at 471
3  (internal quotation omitted); *accord Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261
4  (11th Cir. 2008). This determination is made after discovery is completed so that the court has a
5  complete factual record on which to base its decision whether the plaintiffs are similarly situated.
6  *Id*. If the plaintiffs are not similarly situated, "then the court may decertify the class and dismiss
7  the opt-in plaintiffs without prejudice." *Leuthold*, 224 F.R.D. at 467.
8      Here, the Proposed Settlement provides the following definitions for two collective action
9  groups, one consisting of the "Rounding Collective," and the second, "Off-the-Clock
10 Collective":

- **The Off-the-Clock Collective**: "all Named Plaintiffs and Opt-in Plaintiffs who have been employed by Defendant in an hourly, non-exempt cash handling position at The Orleans Hotel and Casino or the Gold Coast Hotel and Casino, who filed a Consent to Join the Action, who worked more than 40 hours in at least one week during the Relevant Period, and whose claims are not time-barred." Proposed Settlement ¶ 2.31.
- **The Rounding Collective**: "all Named Plaintiffs and Opt-in Plaintiffs who have been employed by Defendant in an hourly, non-exempt position at a Boyd Gaming property that uses the Kronos timekeeping system, who have filed a Consent to Join the Action, who have worked more than 40 hours in at least one week during the Relevant Period, and whose claims are not time-barred." *Id*. ¶ 2.45.

21 The Motion is unopposed and Defendant has not filed a motion to decertify the Collectives,
22 which would prompt a more thorough examination of whether the plaintiffs are "similarly
23 situated" pursuant to 29 U.S.C. § 216. The Motion states that the Proposed Settlement
24 contemplates, among other things, Plaintiffs' risk associated with a decertification motion.
25 However, the Motion does not assert that final certification is appropriate or provide a legal basis
26 for approving the parties' settlement without first addressing final certification of the Collectives.
27 As such, approval of the Proposed Settlement is inappropriate at this time.
28

However, even if the Motion had addressed certification, it failed to provide the Court with sufficient information to determine whether the Proposed Settlement is a fair and reasonable compromise of the parties' FLSA dispute.

### B.     Approval of an FLSA Settlement

The Supreme Court has recognized that an employee's right to fair payment cannot be diminished by contract or waived because that would nullify the purpose of the FLSA and thwart the legislative policies it was designed to effectuate. *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 740 (1981); *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945) ("No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act."). This extends to settlement agreements. *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1236–37, n.8 (M.D. Fla. 2010) (collecting cases). Accordingly, any settlement of an FLSA collective action requires the supervision of either the Secretary of Labor or the district court. *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982) (citing *Brooklyn Savings*, 324 U.S. at 706–07).

Despite the provision authorizing collective actions, the FLSA does not explicitly provide how courts are to manage such actions. In addition, the Ninth Circuit has not established criteria for a district court to consider in determining whether an FLSA settlement should be approved.[2]

---

[2] Although Rule 23 of the Federal Rules of Civil Procedure generally governs class actions in federal court, that rule is not applicable to FLSA collective actions. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA"). The FLSA has its own collective action provision, and that provision controls rather than Rule 23. *See, e.g.*, *McElmurry v. U.S. Bank Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007) (citing 29 U.S.C. § 256 (addressing the date an FLSA action is considered "commenced," which varies for named plaintiffs and opt-in plaintiffs)). The collective action procedures set forth in 29 U.S.C. § 216(b) require plaintiffs to "opt in" to the class, as opposed to Rule 23 which requires plaintiffs to "opt out" if they want to be excluded from the class. *Compare* Fed. R. Civ. P. 23(c)(2)(B)(v) ("the court will exclude from the class any member who requests exclusion") *with McElmurry*, 495 F.3d at 1139 ("unlike a class action, only those plaintiffs who expressly join the collective action are bound by its results"). Because § 216(b) requires plaintiffs to consent to the suit, the due process concerns of a Rule 23 action are not present for FLSA claims. *See Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1136 (D. Nev. 1999). To determine whether a settlement is fair and reasonable, some district courts have implicitly or explicitly considered the factors used to evaluate Rule 23 class action settlements. However, based on the "significant differences between certification under [Rule] 23 and the joinder process under § 216(b)," *Genesis Healthcare*, 133 S. Ct. at 1528, district courts are not constrained by the mandates for proposed settlement of Rule 23 class actions.

After collective members have met the final certification requirement, most district courts in this circuit have evaluated a proposed settlement under a standard established by the Eleventh Circuit in *Lynn's Food*, which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." 679 F.2d at 1355.[3] Following *Lynn's Food*, a district court may approve a proposed settlement in an FLSA collective action if the settlement reflects "a reasonable compromise" over issues that are "actually in dispute." 679 F.2d at 1354; *see also Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013) (reaffirming holding of *Lynn's Food* as to a district court's approval of stipulated judgment to settle FLSA claims).

Plaintiffs' Motion asks the Court to determine that the Proposed Settlement represents a fair and reasonable resolution of a bona fide FLSA dispute. Mot. at 12–13. Although the analysis is conclusory, the Motion states multiple reasons the Court should approve the settlement. First, Plaintiff points out the parties engaged in extensive discovery and motion practice, and this case has been "hotly litigated" for almost two years. The Motion indicates that this case is costly in comparison to the damages sought, and the duration, complexity, and expense of continued litigation would impose a heavy burden on the parties. Additionally, the parties reached an arms- length settlement after hours of negotiations with a third-party neutral. The settlement amounts constitute a fair sum since they are tailored to each collective members' actual damages and the amounts are allocated pro rata. Also, the Motion asserts the process for administering the settlement is straightforward, reasonable, and not burdensome. Because the parties took into account all known facts, circumstances, and risks in settling the FLSA claims, the Motion asks the Court to approve the Proposed Settlement. For the reasons stated below, the Court rejects the Proposed Settlement in its current form and, therefore, denies the Motion without prejudice.

---

[3] *See, e.g.*, *McKeen–Chaplin v. Franklin Am. Mortg. Co.*, Case No. 10-cv-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012); *Trinh v. JPMorgan Chase & Co.*, Case No. 07-cv-01666, 2009 WL 532556, at *1 (S.D. Cal. Mar. 3, 2009); *Goudie v. Cable Commc'ns, Inc.*, Case No. 08-cv-507-AC, 2009 WL 88336, at *1 (D. Or. Jan. 12, 2009); *Hand v. Dionex Corp.*, Case No. 06-cv-1318-PHX-JAT, 2007 WL 3383601, at *1 (D. Ariz. Nov.13, 2007); *Yue Zhou v. Wang's Rest.*, Case No. 05-cv-0279 PVT, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007).

### 1. **Settlement Amount and Distribution Formula**

Section 216 of the FLSA states, in relevant part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b). To evaluate the reasonableness of a proposed FLSA settlement, the Court must first understand the Plaintiffs' and Opt-in Plaintiffs' potential damages (*i.e.* their unpaid regular wages and/or overtime compensation). *See Goldsby*, 294 F.R.D. at 654.

In this case, Plaintiffs allege claims for unpaid wages, unpaid overtime wages, and liquidated damages. *See generally* Master 2nd Am. Compl. (Dkt. #42). The parties have now agreed to a pro rata formula to distribute the settlement proceeds based on the Plaintiffs' expert's calculation of alleged damages for the Rounding Collective. *See* Proposed Settlement ¶ 2.38. The method for calculating damages for the Rounding Collective is outlined in the Plaintiffs' Expert Report (Dkt. #245-9) (submitted as Mot. Ex. B). The expert analyzed Defendant's timekeeping and payroll data to determine the value of unpaid overtime associated with Defendant's time clock rounding policies. *Id.* ¶ 9. According to the Expert Report, the total damages that accrued during the two-year statute of limitations period are $301,934 and for the three-year statutory period, the total damages are $496,189. *Id.* ¶ 28. However, these figures do not include damages for the Off-the-Clock Collective. *Id.* ¶ 7. The Motion represents that, in preparation for mediation, Plaintiffs' expert considered the Off-the-Clock Collective member's good-faith estimates for the time spent cashing out their banks while punching out. *See* Fisher Decl. (Dkt. #245) ¶¶ 21–26. Yet the Motion, counsel's declaration, and the supporting exhibits do not provide totals for the Off-the-Clock Collective member's good-faith estimates. *See also* Pro Rata Allocation Spreadsheet (Dkt. #245-3) (submitted as Mot. Ex. A-1). In short, $496,189 is not the Plaintiffs' and Opt-in Plaintiffs' maximum potential damages.

The Proposed Settlement states that Defendant will pay a maximum settlement amount of $450,000 less attorneys' fees, litigation costs, and service awards. *Id.* ¶¶ 2.23, 2.24, 2.46. The parties have agreed to allocate 25% or $112,500 of the maximum settlement amount to

8

1  Plaintiffs' attorneys' fees and $130,000 to litigation costs. Thus, $242,500 has been allocated to
2  attorneys' fees and litigation costs, while a maximum of $207,500 remains available for pro rata
3  distribution to the Plaintiffs and Opt-in Plaintiffs.

4  Although the Motion asserts that the settlement amount represents "roughly 79% of
5  Plaintiffs' unliquidated three-year damages," Mot. at 13:5–6 (citing Fisher Decl. ¶¶ 29–30), the
6  Court cannot reconcile this math. Plaintiffs' expert calculated $496,189 as the three-year total of
7  damages solely for the Rounding Collective. $207,500 of that figure represents less than 42% of
8  those damages, and that percentage would drop far lower if the three-year damages total included
9  mandatory liquidated damages for both collectives or the damages based on the Off-the-Clock
10 Collective member's good-faith estimates. Additionally, the Pro Rata Allocation Spreadsheet
11 (Dkt. #245-3) plainly indicates that the Plaintiffs and Opt-in Plaintiffs would receive less than
12 36% of their damages. The Motion also states that $265.33 is the "average allocation from the
13 Maximum Settlement Amount" and $119.52 is the "average pro rata allocation each Settling
14 Plaintiff will receive from the Maximum Total Claims." Mot. at 13:5–8 (citing Fisher Decl.
15 ¶¶ 30–31). The Motion does not explain the difference between the two, and the averages are
16 misleading. The Pro Rata Allocation Spreadsheet shows that 11 collective members would
17 receive payments over $1,000 while the vast majority of the collectives would recover very small
18 amounts.

19 In sum, because the Motion does not provide totals for each collective or a breakdown of
20 unpaid wages, overtime, or liquidated damages, the Court cannot find that the parties' agreement
21 is the product of serious, informed, and non-collusive negotiations. The Motion has not provided
22 the Court with sufficient information to properly evaluate the reasonableness and fairness of the
23 Proposed Settlement.

24        **2.**    **Liquidated Damages**

25 Pursuant to the plain language of 29 U.S.C. § 216(b), an award of liquidated damages is
26 mandatory when a FLSA violation occurs, and the amount of liquidated damages is equal to the
27 wage and overtime damages (*i.e.* double damages). *See, e.g.*, *Haro v. City of Los Angeles*, 745
28 F.3d 1249, 1259 (9th Cir.), *cert. denied*, 135 S. Ct. 138 (2014) ("Liquidated damages are

9

mandatory unless the employer can overcome the difficult burden of proving both subjective good faith and objectively reasonable grounds for believing that it was not violating the FLSA.") (internal quotation omitted).[4]  Thus, to determine whether a potential settlement is a fair and reasonable resolution of FLSA claims, a court must consider whether and why plaintiffs agreed to forego their statutory right to liquidated damages and receive only their unpaid overtime compensation or their unpaid hourly wage to settle their claims. *Id.*

Both the Motion and Declaration indicate that the settlement amount represents *unliquidated* damages.  *See* Mot. at 13:6; Fisher Decl. ¶ 29.  As explained above, without a breakdown of the total damages and an explanation for why Plaintiffs' counsel has agreed to forgo liquidated damages, the Motion lacks the basic information necessary for the Court to evaluate the fairness and reasonableness of the potential settlement and release.

### 3. Release of Claims

The Proposed Settlement proposes two broad releases.  For the Rounding Collective, the "Released Rounding Claims" are defined as follows:

> all claims, debts, liabilities, demands, obligations, damages, actions or causes of action asserted in the Action under the FLSA, 29 U.S.C. § 201 *et seq.*, for unpaid overtime wages, liquidated damages, costs, attorneys' fees and all other forms of legal or equitable relief available under the FLSA arising out of or related to Defendant's practice of rounding employee time to the nearest quarter hour.

Proposed Settlement ¶ 2.41.  For the Off-the-Clock Collective, the "Released Wage and Hour Claims" are defined as:

> all claims, debts, liabilities, demands, obligations, damages, actions or causes of action for unpaid regular wages, unpaid overtime wages, unpaid wages for off-the-clock work, meal and rest break pay, liquidated damages, penalties, interest, costs and attorneys' fees arising under or related to federal or Nevada state wage and hour laws, including (without limitation) 29 U.S.C. §§ 207 and 216 and [NRS] sections 608.016, 608.018, 608.019,

---

[4] *See also Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 919–20 (9th Cir. 2003) (liquidated damages represent "the norm, single damages the exception"); 29 U.S.C. § 260 (authorizing narrow circumstances when a court may forgo liquidated damages if it is satisfied that: (1) the act or omission giving rise to the collective action was taken "in good faith," and (2) defendant had "reasonable grounds" for believing it was not violating the FLSA).

> 608.020, 608.030, 608.040, 608.050, 608.080, 608.100, 608.115, 608.160 and 608.190, to the extent these statutes relate to federal or state wage and hour claims.

*Id.* ¶ 2.42. The Proposed Settlement further states that settling Plaintiffs and Opt-in Plaintiffs shall be enjoined from filing any actions or complaints regarding the Released Rounding Claims or Released Wage and Hour Claims "with any state agency, including without limitation the Nevada Office of the Labor Commissioner, or the United States Department of Labor Wage and Hour Division." *Id.* ¶ 5.3.

The Motion does not break down the amount of total damages to show the Court the amount of unpaid wages, unpaid overtime compensation, or liquidated damages under the FLSA. The most overt example of this deficiency is the Motion and Proposed Settlement's failure to allocate any damages at all for the Off-the-Clock Collective. Such damages information is vitally important because, although the Court dismissed Plaintiffs' state law claims, *see* June 9, 2014 Order (Dkt. #93), the "Released Wage and Hour Claims" would include both claims arising under the FLSA and multiple Nevada statutes. Because the FLSA's back-pay and liquidated damages provisions are mandatory, "their compromise cannot be made contingent upon extraneous conditions, such as confidentiality agreements and the waiver of non-FLSA claims." *Briggins v. Elwood TRI, Inc.*, 3 F. Supp. 3d 1277, 1288 (N.D. Ala. 2014). Although broad releases are standard for most civil litigation, in the context of the FLSA, they represent "side deals" that the Court must carefully scrutinize. *Id.* Accordingly, the lack of more complete damages information which prevents the Court from evaluating the reasonableness of the Proposed Settlement also precludes the Court from reviewing the propriety of the proposed releases.

### 4. Absence of a Minimum Settlement Amount

Additionally, the Court has reservations about the absence of a *minimum* settlement amount in the Proposed Settlement. *See, e.g.*, *Murillo*, 266 F.R.D. at 478 (approving a proposed settlement no greater than $450,000 and no less than $200,000). Federal district courts are tasked with faithfully executing "the congressional mandate for 'minimum wages, promptly paid

11

... for the lowest paid segment of the nation's workers'." *Dees*, 706 F. Supp. 2d at 1243–44 (quoting *D.A. Schulte v. Gangi*, 328 U.S. 108, 116 (1946)).

Here, Defendant has agreed to pay a total settlement amount of no more than $207,500 to the Plaintiffs and Opt-in Plaintiffs,[5] but the total amount paid will depend upon the number of collective members who execute consents and the amount each is due pursuant to the pro rata allocation. Less than 10% of the 28,000 putative collective members to whom Plaintiffs sent the initial notice chose to opt-in to this action. This low participation rate suggests that Defendant is likely to pay far less than $207,500. Many collective members do not respond or submit consents for very small amounts of money that require reading and understanding settlement and release paperwork. The total settlement amount is already deeply discounted from Defendant's potential statutory liability for double damages under § 216(b) based on the asserted, but poorly explained, litigation risk of taking this case through dispositive motions and a trial. Additionally, even if every collective member consents to settlement, which is highly unlikely, and Defendant pays the maximum settlement amount, the Court is not convinced the proposed confidentiality provision should be approved.[6]

### 5. Confidentiality Provision

The weight of authority holds that the FLSA does not support confidentiality provisions in settlement agreements. To further Congressional intent of "private—public" rights under the FLSA, numerous courts have determined that confidentiality provisions in FLSA settlement agreements do not further resolution of a bona fide dispute between the parties. *See e.g.*, *Dees*, 706 F. Supp. 2d at 1242 (discussing the FLSA's requirement that employers display a detailed notice of employee rights); *Briggins*, 3 F. Supp. 3d at 1289–90. "By including a confidentiality provision, the employer thwarts the informational objective of the notice requirement by

---

[5] As noted above, the Pro Rata Allocation Spreadsheet (Dkt. #245-3) shows that the Proposed Settlement would pay out less than 36% of the total damages, and that percentage is actually lower because the damage figures do not include mandatory liquidated damages or the Off-the-Clock Collective's damages.

[6] *See* Proposed Settlement ¶ 6.5 (section titled "No Press Releases/Public Comment" restricts the collective members from discussing the settlement with very limited exception); ¶ 6.15 (stating that the Court shall retain jurisdiction to enforce the terms of the agreement).

silencing the employee who has vindicated a disputed FLSA right." *Dees*, 706 F. Supp. 2d at 1242.

Acknowledging the unequal bargaining power between employers and employees, the FLSA rejects confidentiality provisions in settlement agreements as contrary to the statutes' terms and legislative purpose. *Id.* (quoting *Brooklyn Savings*, 324 U.S. 706–07). Confidentially agreements also undermine and contravene the court's role in FLSA collective actions:

> An employer who pays less than the minimum wage or who pays no overtime has no incremental incentive to comply voluntarily with the FLSA, if, after an employee complains, the employer privately compromises the claim for a discount-an amount less than the full amount owed under the FLSA (plus, with savvy negotiation, a confidentiality agreement to preclude the spread to other employees of information about the FLSA).

*Dees*, 706 F. Supp. 2d at 1237. Conversely, when judicial approval is required and confidentially provisions are rejected, "the discount might become unavailable and the undiscounted principal owed the employee might increase (for example, as a result of liquidated damages or a more refined damage computation)," and both of these prospects encourage voluntary compliance and support the Department of Labor's regulatory effort to notify employees of their FLSA rights. *Id*. Accordingly, a district court "should reject as unreasonable a compromise that contains a confidentiality provision, which is unenforceable and operates in contravention of the FLSA." *Id.* at 1242–43.

The Proposed Settlement contains a provision titled "No Press Releases/Public Comment," which restricts the collective members from discussing the settlement except with Defendant's express written consent:

> **No Press Releases/Public Comment**. Unless they first obtain Defendant's express written consent, Plaintiffs' Counsel and Plaintiffs shall not (a) discuss, reveal, disclose, publicize or promote the fact or terms of this Settlement, or the negotiations leading to this Settlement, to any third party (including but not limited to the media, the legal community or the public at large), or (b) issue any press releases or initiate any contact with the press regarding the Settlement, or otherwise advertise or publicize the Settlement. Nothing in this Agreement is intended to prevent Plaintiffs or Plaintiffs' Counsel from disclosing or discussing the terms of this Settlement (i) with the Court, (ii) with each other, (iii) with the settlement administrator (if any), (iv) with Plaintiffs'

> spouse, tax preparer, or financial advisor or (v) as otherwise required by law. Defendant shall share the details of this Settlement on a need-to-know basis only.

*See* Proposed Settlement ¶ 6.5. The plain language of this provision prevents the collective members from disclosing the settlement terms to the more than 25,000 employees who did not opt-in to this collective action. Although it is not expressly titled as a confidentiality provision, the intent and goal of this language is clear: to prevent employees from informing others of these FLSA claims, and their own recovery. A violation of this provision could subject a Plaintiff or Opt-in Plaintiff to a breach of contract claim, *see* Proposed Settlement ¶ 6.15, and such claims could be interpreted as a retaliatory act against the employee for asserting rights under the FLSA. *See* 29 U.S.C. § 215(a)(3). Despite the parties' assent to this confidentiality term, which the agreement calls something else in its heading, the statute and supporting case law clearly establish that such provisions are not appropriate for settlement of FLSA claims. The Court will not approve the proposed settlement with this confidentiality provision in it.

### 6. Attorney's Fees and Litigation Costs

The FLSA provides for settlement agreements to include an award of reasonable fees. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). In the context of a collective action, a court must determine the reasonableness of attorneys' fees to minimize conflicts that may arise between the plaintiffs and their counsel. *Goldsby*, 294 F.R.D. at 655 (citing *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980)). A district court must be sure that the settlement agreement and release has not been tainted by any conflict of interest regarding the agreed upon attorneys' fees. *Id.* (citing *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009) ("FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.")). The amount of attorneys' fees and costs allocated in an FLSA settlement should, therefore, be separately reached and without regard to the settlement amount paid to plaintiffs. *Id. See also Dees*, 706 F. Supp. 2d at 1243.

1    Additionally, even when attorneys' fees and expenses are negotiated separately from the
2    amount paid to FLSA plaintiffs, a court still must determine the reasonableness of those fees and
3    expenses by considering "the number of hours reasonably expended on the litigation, together
4    with the customary hourly rate for similar legal services." *Goldsby*, 294 F.R.D. at 655 (citing
5    *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Padurjan v. Aventura Limousine & Transp.*
6    *Service, Inc.*, 441 Fed. Appx. 684, 686 (11th Cir. 2011)).  An award of 25% in attorneys' fees to
7    be paid from a settlement fund represents a "benchmark" percentage for fee awards from a
8    common fund.  *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015).  However, the Ninth
9    Circuit has cautioned that the district court should not calculate fees using "a mechanical or
10   formulaic approach that results in an unreasonable reward." *In re Bluetooth Headset Products*
11   *Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011).  A party moving for attorneys' fees must still
12   address the factors set forth in Local Rule 54-16, which guides the court's analysis of the
13   lodestar amount.  *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975);
14   *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 978 (9th Cir. 2008) (although district courts
15   have discretion in determining the amount of the fee award, awards for attorneys' fees must be
16   calculated using the lodestar method).

17   As previously noted, the parties have agreed to allocate 25% or $112,500 of the
18   maximum settlement amount to Plaintiffs' attorney's fees.  Plaintiffs' counsel represents that this
19   is far less than the actual fees and costs incurred which exceed $500,000 in fees for the Nichols
20   Kaster, PLLP firm alone.  $130,000 of the maximum settlement amount will be allocated to
21   satisfy Plaintiffs' litigation costs and expenses.  To date, Plaintiffs' counsel has expended over
22   $130,000, and anticipates spending additional sums "that will not be recouped for disseminating
23   notice of a settlement and the settlement checks, re-mailing notice and checks (as necessary), and
24   to tending to any other requirements of the settlement process." *See* Itemization of Costs (Dkt.
25   #245-10) (submitted as Mot. Ex. C).

26   As a general matter, the current 25% allocation for attorneys' fees is reasonable under
27   Ninth Circuit authority.  However, because the Court cannot resolve the question of whether the
28   Proposed Settlement is a fair and reasonable resolution of bona fide disputes of Plaintiffs' FLSA

claims, the Court also lacks sufficient information to decide whether the agreed upon attorneys' fees are reasonable. The Motion does not indicate whether the parties separately negotiated payment for attorneys' fees and expenses, or provide an itemization of the fees and costs and the hourly rate charged.

### 7. Service Payments to Named Plaintiffs

The Ninth Circuit has recognized that class representatives are entitled to some compensation for the expense he or she incurs on behalf of the class. *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 976–77 (9th Cir. 2003) (finding that named plaintiffs are eligible for reasonable incentive payments). To determine whether a service payment is reasonable, the district court must evaluate awards individually, using relevant factors including: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefitted from those actions, (3) the amount of time and effort the plaintiff expended in pursuing the litigation, and (4) reasonable fears of workplace retaliation." *Id.* at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, the parties agreed to set aside a "Service Award" in an amount not to exceed $500 for each of the five Named Plaintiffs in recognition of their service to the collective. Proposed Settlement ¶ 3.3. Additionally, the parties agreed to a $100 Service Award for each of the 23 Named and Opt-in Plaintiffs deposed by Defendant. *Id*. The Service Awards are in addition to their pro rata allocations. *Id*. ¶ 2.46. The Court finds that the proposed awards are reasonable and they will not significantly reduce the amount of settlement funds available to the rest of the collective. Given the Plaintiffs' time and efforts undergoing lengthy depositions and responding to written discovery requests, these incentive awards appropriately compensate them for their time and reward them for their service to the collective.

### 8. Notice to the Collectives

In the context of class action notice, the Ninth Circuit has found notice is satisfactory if it generally describes the settlement's terms in sufficient detail to alert those with objections to investigate and to come forward and be heard. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

1    After the initial Notice was circulated in this case, approximately 2,632 persons submitted consents to join this action and the parties agree 2,158 of those qualify for inclusion in the Collectives. Fisher Decl. ¶¶ 12–16. Plaintiffs request an order allowing Plaintiffs' counsel to distribute two notices by U.S. Mail within seven days of the Court's order approving the Motion. *See* Persons Receiving Notice of Dismissal (Dkt. #245-4) (submitted as Mot. Ex. A.2); Notice of Dismissal (Dkt. #245-5) (submitted as Mot. Ex. A.3); Persons Receiving Notice of Settlement (Dkt. #245-6) (submitted as Mot. Ex. A.4); Notice of Settlement and Release (Dkt. #245-7) (submitted as Mot. Ex. A.5); Consent to Settlement and Release of Claims (Dkt. #245-8) (submitted as Mot. Ex. A.6).

The Motion indicates there are 461 persons for whom the expert calculated no damages during the relevant time period according to Defendants' records. *See* Pro Rata Allocation Spreadsheet (Dkt. #245-3) (submitted as Mot. Ex. A.1). The parties have agreed to dismiss these persons without prejudice. Proposed Settlement ¶ 4.2.1; *see also* Persons Receiving Notice of Dismissal (Dkt. #245-4) (submitted as Mot. Ex. A.4); Proposed Notice of Dismissal (Dkt. #245-5) (submitted as Mot. Ex. A.3). The Court finds that the Proposed Notice of Dismissal adequately explains the cause for dismissal and advises these individuals to swiftly seek legal counsel should they believe they have actionable claims against Defendant. Thus, the Proposed Notice of Dismissal is acceptable in its current form.

The Named Plaintiffs and Opt-In Plaintiffs who will receive settlement offers are identified in the list entitled Persons Receiving Notice of Settlement (Dkt. #245-6) (submitted as Mot. Ex. A.4). The Court finds that the Proposed Notice of Settlement adequately explains the options available to collective members as it provides a summary of the settlement's terms, including each Plaintiff's and Opt-in Plaintiff's individual allocation, the scope of the release, procedure and time period for agreeing to the settlement if they so choose, their rights if they choose not to consent or opt-in to the settlement, and a statement that the Court has preliminarily approved the settlement. The Motion proposes a 60-day opt-in period from the mailing of the notice and consent. In general, the form of the Proposed Notice of Settlement and Proposed Consent is acceptable, except as described in this decision and order.

Based on the foregoing,

**IT IS ORDERED** Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (Dkt. #245) is **DENIED without prejudice.**

DATED this 13th day of August, 2015.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE