1

2

3

4                          UNITED STATES DISTRICT COURT

5                                DISTRICT OF NEVADA

6                                       * * *

7    CRAIG GAMBLE, et al.                        Case Nos. 2:13-cv-01009-JCM-PAL
                                                             2:13-cv-01043-JCM-PAL
8                              Plaintiffs,                    2:13-cv-01801-JCM-PAL

9         v.
                                                          **ORDER**
     BOYD GAMING CORPORATION,
10                                               (Mot. Prelim. Apprv. Stlmt – ECF No. 250)
                               Defendant.
11

12        Before the court is Plaintiffs' renewed Unopposed Motion for Preliminary Approval of

13   Settlement (ECF No. 250) (the "Motion").  No opposition to the Motion was filed and the time

14   for filing a response has now run.[1]  This Motion was referred to the undersigned pursuant to 28

15   U.S.C. § 636(b)(1)(A) and LR IB 1-3 and 1-7 of the Local Rules of Practice.

16                                    **BACKGROUND**

17        Plaintiffs Craig Gamble, Michael Simmons, Maria High, Kathy Belmonte, and Richard

18   Caldwell (jointly, "Plaintiffs") filed three separate lawsuits against Defendant Boyd Gaming

19   Corporation on May 9, 2013 (Case No. 2:13-cv-01009-JCM-PAL), June 12, 2013 (Case No.

20   2:13-cv-01043-JCM-PAL),  and  October  1,  2013  (Case  No.  2:13-cv-01801-JCM-PAL).

21   Plaintiffs alleged claims to recover unpaid wages earned during time rounded-off by Defendant's

22   timekeeping system and time they spent cashing out their banks off-the-clock.  Master 2nd Am.

23   Compl. (ECF No. 42) ¶¶ 20–28.  Pursuant to a stipulation by the parties, the court consolidated

24   the lawsuits making the instant case, Case No. 2:13-cv-01009-JCM-PAL, the base file.  Nov. 20,

25   2013 Order (ECF No. 41).  The operative complaint in this consolidated action is Plaintiffs'

26   Master Second Amended Complaint (ECF No. 42), which asserts claims for unpaid regular

27   ─────────────────

28   [1]  Plaintiffs also filed a Declaration (ECF No. 253) supplementing their Motion.

                                            1

wages and overtime wages under the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and applicable Nevada law.

On December 5, 2013, Plaintiffs filed a Motion to Certify Class (ECF No. 44) seeking conditional certification of a collective action. Defendant filed a Motion to Dismiss (ECF No. 46) Plaintiffs' state law claims on December 9, 2013. The court granted Defendant's motion and dismissed the state law claims. *See* June 9, 2014 Order (ECF No. 93). As a result, the following FLSA claims in the Second Master Complaint remained viable:

> (1) violations of the FLSA for failure to pay wages due to a scheme by the defendant to "round down" employees' time, resulting in the improper calculation of wages and unpaid time; (2) violations of the FLSA for failure to pay wages due to a scheme by defendant to require employees to work "off-the-clock;" (3) violation of the FLSA for those employees who were subject to the defendant's scheme to "round down" and to require "off-the-clock" work.

*Id*. at 2. The court also granted Plaintiffs' motion in part and conditionally certified two collectives. *Id.* at 7–8. The parties were ordered to "meet and confer in order to agree on a mutually acceptable notice." *Id*. at 9:24–25. On July 11, 2014, the court approved the parties' stipulated notice to the collectives. Stipulation & Order (ECF No. 106). Defendant provided a putative class list of almost 28,000 persons and Plaintiffs distributed the Notice. *See* Decl. of Michelle R. Fisher, Esq. (ECF No. 250-1) ¶¶ 11–12.

Excluding the four individuals who initially joined and later withdrew, 2,632 persons submitted consents to join this action. *Id*. ¶ 12. Defendant contested the inclusion of approximately 630 individuals, either because they did not work during the relevant timeframe or at the relevant property. *Id*. ¶ 13. After meeting and conferring, the parties agreed that 476 persons did not qualify for inclusion and those persons should be dismissed without prejudice. *Id*. ¶ 15. As a result, the parties agree that 2,158 persons (the "Opt-In Plaintiffs") consented to join this action and qualify for the collectives as defined by the court. *Id*. ¶ 16.

The parties engaged in considerable discovery efforts throughout this action, including written discovery and depositions. *See, e.g.*, *id*. ¶¶ 3–10. For example, the parties exchanged approximately 8,600 pages of documents and 489.13 megabytes of timekeeping and payroll data. *Id*. ¶ 9. Plaintiffs deposed Defendant through five corporate designees. *Id*. ¶ 4. Defendant

deposed each of the five named Plaintiffs and 18 of the Opt-In Plaintiffs. *Id*. ¶ 7. Both parties retained experts and exchanged expert disclosures, reports, and almost three gigabytes of data associated with expert reports. *Id*. ¶¶ 17–19.

Discovery closed on March 9, 2015. *See* Jan. 12, 2015 Order (ECF No. 213). The parties participated in a mediation before the Honorable Peter Lichtman (Ret.) before dispositive motions were due. Fisher Decl. ¶ 36. The Motion represents that the parties arrived at and signed a memorandum of understanding containing material terms of their settlement after hours of negotiations. *Id*. ¶ 36. The parties then reduced the agreement to the Stipulation of Settlement and Release (ECF No. 250-2) (the "Proposed Settlement") (submitted as Mot. Ex. A). *See* Fisher Decl. ¶ 39.

The current Motion is the second unopposed motion for preliminary approval of settlement filed in this case. The court denied the first motion for the reasons articulated in the written Order (ECF No. 247).

## **DISCUSSION**

The FLSA regulates the minimum wages and overtime compensation paid to workers. 29 U.S.C. §§ 206–207; *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1143–44 (9th Cir. 2007). To penalize violations of §§ 206 and 207 of the FLSA, § 216 states that employers are "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The FLSA also provides a private right of action enabling workers to maintain a lawsuit against their employer on "behalf of himself or themselves and other employees similarly situated," *i.e.* a collective action. *Id*. *See also Gray v. Swanney-McDonald, Inc.*, 436 F.2d 652, 655 (9th Cir. 1971).

## I.    FINAL CERTIFICATION OF THE FLSA COLLECTIVES

The FLSA does not define the term "similarly situated" for the purposes of bringing a collective action, and the Ninth Circuit has not yet formulated a test for courts to determine whether putative collective members are similarly situated. *Vasquez v. Coast Valley Roofing*, 670 F. Supp. 2d 1114, 1123 (E.D. Cal. 2009). However, a number of courts, including this one,

have adopted a two-step approach for determining whether potential plaintiffs are "similarly situated" for purposes of conditional certifying an FLSA collective. *Kress v. Price Waterhouse Coopers, LLP*, 263 F.R.D. 623, 627 (E.D. Cal. 2009) (noting that district courts in the Ninth Circuit predominantly use a two-tier approach to determine whether a group of employees is similarly situated). At the first, or "notice stage," a court relies "primarily on the pleadings and any affidavits submitted by the parties," to decide whether the potential collective should be conditionally certified and given notice of the action. *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004); *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008) ("[T]he importance of certification, at the initial stage, is that it authorizes either the parties, or the court itself, to facilitate notice of the action to similarly situated employees."). If the court conditionally certifies a collective and authorizes notice, the parties conduct discovery, after which the employer may move to decertify the class. *Kress*, 263 F.R.D. at 628; *Leuthold*, 224 F.R.D. at 467. This triggers the second stage of class analysis in which a court makes a factual determination regarding the propriety and scope of the class. *Id.* This determination is made after discovery is completed so that the court has a complete factual record on which to base its decision whether the plaintiffs are similarly situated. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 471 (E.D. Cal. 2010). If the plaintiffs are not similarly situated, "then the court may decertify the class and dismiss the opt-in plaintiffs without prejudice." *Leuthold*, 224 F.R.D. at 467.

Here, the Proposed Settlement provides the following definitions for two collective action groups, one consisting of the "Rounding Collective," and the second, "Off-the-Clock Collective":

- **The Rounding Collective**:

> all Named Plaintiffs and Opt-in Plaintiffs who have been employed by Defendant in an hourly, non-exempt position at a Boyd Gaming property that uses the Kronos timekeeping system, who have filed a Consent to Join the Action, who have worked more than 40 hours in at least one week during the Relevant Period, and whose claims are not time-barred.

Proposed Settlement ¶ 2.45.

4

- **The Off-the-Clock Collective**:

> all Named Plaintiffs and Opt-in Plaintiffs who have been employed by Defendant in an hourly, non-exempt cash handling position at The Orleans Hotel and Casino or the Gold Coast Hotel and Casino, who filed a Consent to Join the Action, who worked more than 40 hours in at least one week during the Relevant Period, and whose claims are not time-barred.

*Id.* ¶ 2.31.   The Motion states that the Off-the-Clock Collective is really a sub-group of the Rounding Collective because all members of the Off-the-Clock Collective are also members of the Rounding Collective.  *See* Mot. (ECF No. 250) at 6 n.13.  Defendant did not file a motion to decertify the Collectives, and this Motion is unopposed.

Some district courts have held that even when the parties settle, the court must make a final certification finding before approving a collective action settlement."  *See, e.g.*, *Goldsby v. Renosol Seating, LLC*, 294 F.R.D. 649, 656 (S.D. Ala. 2013); *Murillo*, 266 F.R.D. at 471. Plaintiffs argue that only a small minority of courts require the second stage of class analysis for *settlement* purposes, and those cases erroneously interpret *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007), as requiring final certification.  *See* Mot. (ECF No. 250) at 11 n.16. Plaintiffs assert that the "question of whether opt-in plaintiffs may collectively settle their claims is markedly different than the question of whether a collective action may precede to trial on a representative basis."  *Id.* at 11:5–7.  The court agrees.

Although numerous district courts in the Ninth Circuit have required plaintiffs to make some showing for a final class certification before approving an FLSA settlement, those cases were "hybrid actions" in which plaintiffs alleged both state and federal claims, *i.e.*, FLSA collective actions simultaneously proceeding as state law-based class actions under Rule 23 of the Federal Rules of Civil Procedure.[2]  Rule 23 governs class actions in federal court and it restricts class actions to cases in which the plaintiffs meet the requirements of numerosity, commonality, typicality, and adequacy of representation.  *See* Fed. R. Civ. P 23(a); *Murillo*, 266

---

[2]  *See, e.g.*, *Murillo*, 266 F.R.D. at 471; *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1005 (N.D. Cal. 2010); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1124 (E.D. Cal. 2009); *Clesceri v. Beach City Investigations & Protective Servs., Inc.*, Case No. 10-cv-3873-JST-RZX, 2011 WL 320998, at *4 (C.D. Cal. Jan. 27, 2011); *Carter v. Anderson Merchandisers, LP*, Case No. 08-cv-00025-VAP-OPX, 2010 WL 144067, at *3 (C.D. Cal. Jan. 7, 2010).

F.R.D. at 474 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).  The Ninth Circuit has held that when parties settle prior to receiving Rule 23 class certification, courts must examine the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  However, Rule 23 is not applicable to FLSA collective actions.  *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA").  The FLSA has its own collective action provision that is fundamentally different from a class action certified under Rule 23.  *See, e.g.*, *McElmurry v. U.S. Bank Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007) (citing 29 U.S.C. § 256).

Most notably, the collective action procedures set forth in 29 U.S.C. § 216(b) require plaintiffs to "opt in" to the class, as opposed to Rule 23 which requires plaintiffs to "opt out" if they want to be excluded from the class.  *Compare* Fed. R. Civ. P. 23(c)(2)(B)(v) ("the court will exclude from the class any member who requests exclusion") *with McElmurry*, 495 F.3d at 1139 ("unlike a class action, only those plaintiffs who expressly join the collective action are bound by its results").  Because § 216(b) requires plaintiffs to consent to the suit, the due process concerns of a Rule 23 action are not present for FLSA claims.  *See Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1136 (D. Nev. 1999); *see also Genesis Healthcare*, 133 S. Ct. at 1528 (recognizing the "significant differences between certification under [Rule] 23 and the joinder process under § 216(b)").  By contrast, members of a class certified under Rule 23 are bound by the outcome of the case unless they take an affirmative action to opt out.

The court finds that a final certification of the Collectives is not necessary to preliminarily approve the parties' proposed settlement.  Plaintiffs received preliminary certification that they are similarly situated and their FLSA claims do not present due process concerns since this is not a hybrid action involving Rule 23 class action claims.  Plaintiffs' state law claims were dismissed from this case.  *See* June 9, 2014 Order (ECF No. 93).  Where, as here, Plaintiffs are not settling Rule 23 class action claims and Defendant has not moved to decertify the FLSA collectives, additional scrutiny of the Collectives will serve no practical purpose.  Indeed, Plaintiffs factored the risk of decertification of one or both Collectives into

1  their decision to settle, and the court will assess the risk in its analysis of the fairness and

2  reasonableness of the proposed compromise.

3  **II.    PRELIMINARY APPROVAL OF SETTLEMENT FOR PLAINTIFFS' FLSA CLAIMS**

4        **A.    Applicable Legal Standard**

5        The Supreme Court has recognized that an employee's right to fair payment cannot be

6  diminished by contract or waived because that would nullify the purpose of the FLSA and thwart

7  the legislative policies it was designed to effectuate.  *Barrentine v. Arkansas–Best Freight*

8  *System, Inc.*, 450 U.S. 728, 740 (1981); *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707

9  (1945) ("No one can doubt but that to allow waiver of statutory wages by agreement would

10  nullify the purposes of the Act.").  This extends to settlement agreements.  *Dees v. Hydradry,*

11  *Inc.*, 706 F. Supp. 2d 1227, 1236–37, n.8 (M.D. Fla. 2010) (collecting cases).  Accordingly, any

12  settlement of an FLSA collective action requires the supervision of either the Secretary of Labor

13  or the district court.  *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53

14  (11th Cir. 1982) (citing *Brooklyn Savings*, 324 U.S. at 706–07).

15        Despite the provision authorizing collective actions, the FLSA does not explicitly provide

16  how courts are to manage such actions.  In addition, the Ninth Circuit has not established criteria

17  for a district court to consider in determining whether an FLSA settlement should be approved.

18  Most district courts in this circuit have evaluated a proposed settlement under a standard

19  established by the Eleventh Circuit in *Lynn's Food*, which requires the settlement to constitute "a

20  fair and reasonable resolution of a bona fide dispute over FLSA provisions."  679 F.2d at 1355.[3]

21  Following *Lynn's Food*, a district court may approve a proposed settlement in an FLSA

22  collective action if the settlement reflects "a reasonable compromise" over issues that are

23  "actually in dispute."  679 F.2d at 1354; *see also Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307

24

25     [3]  *See, e.g.*, *McKeen–Chaplin v. Franklin Am. Mortg. Co.*, Case No. 10-cv-5243 SBA, 2012 WL 6629608,
at *2 (N.D. Cal. Dec. 19, 2012); *Trinh v. JPMorgan Chase & Co.*, Case No. 07-cv-01666, 2009 WL
26  532556, at *1 (S.D. Cal. Mar. 3, 2009); *Goudie v. Cable Commc'ns, Inc.*, Case No. 08-cv-507-AC, 2009
WL 88336, at *1 (D. Or. Jan. 12, 2009); *Hand v. Dionex Corp.*, Case No. 06-cv-1318-PHX-JAT, 2007
27  WL 3383601, at *1 (D. Ariz. Nov.13, 2007); *Yue Zhou v. Wang's Rest.*, Case No. 05-cv-0279 PVT, 2007
WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007).

28

1  (11th Cir. 2013) (reaffirming holding of *Lynn's Food* as to a district court's approval of

2  stipulated judgment to settle FLSA claims).[4]

3       **B.**    **Analysis of the Proposed Settlement**

4          **1.**    <u>**A Fair and Reasonable Compromise of FLSA Claims and Defenses**</u>

5       Plaintiffs' Motion asks the court to determine that the Proposed Settlement represents a

6  fair and reasonable resolution of a bona fide FLSA dispute.  Mot. at 14–18.  The Motion

7  provides multiple reasons to approve the settlement and represents that the parties took into

8  account all known facts, circumstances, and risks in settling the FLSA claims.  The Proposed

9  Settlement reaches a compromise despite the parties' disagreement on several key issues such as:

10  (1) whether rounded-off time is attributable to compensable work; (2) whether the off-the-clock

11  Plaintiffs actually cashed out while clocked out; (3) whether Defendant is subject to liquidated

12  damages; and (4) whether Defendant's actions were willful, thus, subjecting Defendant to the

13  extended three-year statute of limitation.  *Id*. at 14–15.  Although Plaintiffs believe they have

14  asserted a good claim that Defendant's rounding practice violates the law, they acknowledge the

15  challenges they would face in proving the claim and Defendant's genuine arguments against

16  compensability.  *Id*. at 15–16.  Should the district judge agree with Defendant's position and

17  enter summary judgment, "Plaintiffs' rounding claims could be reduced significantly or even

18  eliminated."  *Id*. at 16:6.  With regard to the off-the-clock claims, the Motion represents that

19  substantial risks exist for both parties because there is no record of off-the-clock work, meaning

20  that it would be Plaintiffs and Opt-in Plaintiffs' word against Defendant's at trial.  Even if the

21  factfinder were to accept Plaintiffs' claim that they cashed out after they clocked out, the

22  factfinder could still find that the process took far less time than they allege.  Such a finding

23  could reduce Plaintiffs' claim by 80% or more.  Plaintiffs could also lose up to another 50% of

24  the total value of their claims if Defendant was successful with its good faith defense against

25  ─────────────

26  [4]  To determine whether a settlement is fair and reasonable, some district courts have implicitly or explicitly considered the factors used to evaluate Rule 23 class action settlements.  However, given the

27  significant differences in the respective joinder processes of Rule 23 and the FLSA (*i.e.* opting-in versus opting-out), district courts are not constrained by the mandates for proposed settlement of Rule 23 class actions.  *See Genesis Healthcare*, 133 S. Ct. at 1528.

28

liquidated damages.  If Plaintiffs were unable to prove willfulness, "their back pay for the rounding and off-the-clock work would be reduced by $218,101.46, and 375 Plaintiffs would be time barred from any recovery."  *Id.* at 17:8–10.  The risks associated with liquidated damages and willfulness were considered during settlement negotiations since the Proposed Settlement treats one-half of Plaintiffs' allocations as W-2 wages (*i.e.*, compensatory damages) and the other half as other income on IRS form 1099 (*i.e.*, liquidated damages).

Additionally, Plaintiffs acknowledge the risk of decertification of one or both collectives if they proceed with this case.  Although continued litigation is possible post-decertification, it would likely be cost-prohibitive given the low potential recovery for many Plaintiffs and Opt-in Plaintiffs.  "Settling now ensures the maximum number of Plaintiffs will receive compensation for their alleged unpaid time and will allow both parties to stave off further mounting costs."  *Id.* at 17:25–27.  Consistent with Plaintiffs' representations, the evidence provided in support of the Motion confirms that Plaintiffs would face substantial factual hurdles to prevail at trial.  Thus, the court is satisfied that the parties' Proposed Settlement reasonably accounts for the risk, expense, and complexity of issues that are actually in dispute.

The Motion asserts that the Proposed Settlement is not the product of collusion or fraud and points to the parties' extensive discovery and motion practice to show that the parties contentiously litigated this case for years.  Their fierce advocacy evidences a *bona fide* dispute free of fraud or collusion.  In addition, the Motion indicates that the parties reached an arms-length settlement after hours of negotiations with a third-party neutral.  Such voluntary participation in settlement discussions with a mediator is "highly indicative of fairness."  *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).  These facts weigh in favor of preliminary approval of the Proposed Settlement.

### 2.      Settlement Amount and Distribution Formula

The Motion asserts that the settlement amounts constitute a fair sum since they are tailored to each collective members' actual damages and the amounts are allocated pro rata. Section 216 of the FLSA states, in relevant part:

/ / /

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b).  To evaluate the reasonableness of a proposed FLSA settlement, the court must first understand the potential damages of the Plaintiffs and members of the collectives (*i.e.* their unpaid regular wages and/or overtime compensation).  *See Goldsby*, 294 F.R.D. at 654.  However, at the "preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval'."  *Murillo*, 266 F.R.D. at 479 (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).  The court's review is focused on "whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys."  *Id.* (citation omitted).

Here, Plaintiffs allege claims for unpaid wages, unpaid overtime wages, and liquidated damages.  *See generally* Master 2nd Am. Compl. (ECF No. 42); *see also* Proposed Settlement ¶ 1.5.  Defendant will pay a maximum settlement amount of $450,000 less attorneys' fees, litigation costs, and service awards.  Proposed Settlement ¶¶ 2.23, 2.24, 2.46.  The parties have agreed to allocate 25% or $112,500 of the maximum settlement amount to Plaintiffs' attorneys' fees and $130,000 to litigation costs.  Thus, $242,500 has been allocated to attorneys' fees and litigation costs and a maximum of $207,500 will be available for distribution to Plaintiffs and Opt-in Plaintiffs.  The parties have agreed to a pro rata formula to distribute the remaining settlement proceeds based on the Plaintiffs' expert's calculation of alleged damages.  *Id.* ¶ 2.38.  The Motion represents that "Plaintiffs' expert's calculations, along with mediation calculations, form the basis of the proposed settlement allocation."  Mot. at 7.

a.    *The Rounding Collective*

The expert analyzed Defendant's timekeeping and payroll data to determine the value of unpaid overtime associated with Defendant's time clock rounding policies.  Pls.' Expert Report

/ / /

/ / /

(ECF No. 250-13) (submitted as Mot. Ex. F) ¶ 9.[5]  Although 2,158 Opt-In Plaintiffs consented to join this action, the timekeeping data revealed that 835 experienced zero recoverable rounding damages during the two-year period and 466 experienced zero recoverable rounding damages during the three-year period because they did not work overtime.  Mot. at 7; Decl. of Alexander Wise (ECF No. 250-23) ¶ 7.   According to the Motion, the expert concluded that the total damages accrued during the two-year statute of limitations period are $301,174.56 and for the three-year statutory period, the total damages are $494,256.41.  Mot. at 7; *see also* Mot. Ex. A-1 (ECF No. 250-3), Pro Rata Worksheet at 71; Wise Decl. ¶ 8.   When adjusted to include liquidated damages, these totals increase to $602,349.13 and $988,512.81 respectively.  *See* Pro Rata Worksheet at 71; Wise Decl. ¶ 8.

### b.   *The Off-the-Clock Collective*

The Motion represents that, in preparation for mediation, Plaintiffs' expert considered the Off-the-Clock Collective member's good-faith estimates for the time spent cashing out their banks while punching out.  Mot. at 5; Fisher Decl. ¶ 22.  Of the 78 members of the Off-the-Clock Collective, 11 represented that they did not cash out their banks while off the clock.  Fisher Decl. ¶ 27; Wise Decl. ¶ 11.  Thus, Plaintiffs' expert did not calculate damages for these 11 persons.  Fisher Decl. ¶ 27.  Of the remaining 67, an additional 18 collective members did not experience damages during the two-year statutory period and 10 more did not experience damages during the three-year period.  Wise Decl. ¶ 11.  The expert concluded that the total damages the Off-the-Clock Collective accrued are $47,080.78 during the two-year statute of limitations period and $72,100.40 for the three-year statutory period.  Mot. at 8; Pro Rata Worksheet at 71; Wise Decl. ¶ 12.  When adjusted to include liquidated damages, these totals increase to $94,161.56 and $144, 200.80 respectively.  *See* Pro Rata Worksheet at 71; Wise Decl. ¶ 12.

/ / /

/ / /

---

[5]  The Motion represents that the totals contained in Plaintiffs' Expert Report are slightly different than those stated in the Motion because the expert discovered duplicate records after the report was produced. Mot. at 7 n.8 (citing Fisher Decl. ¶ 32; Pls.' Expert Report ¶ 23).

c.      *Total Damages of Both Collectives*

Adding together the damages of both collectives, the total compensatory and liquidated damages for the two-year statute of limitations period are $696,510.69 and $1,132,713.60 for the three-year statutory period. *See* Pro Rata Worksheet at 71. The Motion asserts that the $450,000 maximum settlement amount represents 64.61% of the alleged compensatory and liquidated damages for the two-year statutory period and 39.73% for the three-year statutory period. Mot. at 18; Wise Decl. ¶ 18.

After the deduction of attorneys' fees and costs, which accounts for $242,500 of the $450,000 maximum settlement, $202,700 is available for distribution to Plaintiffs and Opt-in Plaintiffs. This amount represents 29.10% of their alleged compensatory and liquidated damages for the two-year statutory period and 17.90% for the three-year statutory period. Wise Decl. ¶¶ 21–22. The settling Plaintiffs and Opt-in Plaintiffs will receive an average pro rata distribution of $119.52, and $38.96 is the median. Mot. at 18 (citing Wise Decl. ¶ 20). The highest award is $5,412.21.[6] The Pro Rata Worksheet shows that 11 collective members would receive payments over $1,000 while the vast majority of the collectives would recover very small amounts. Plaintiffs' expert calculated that 449 collective members experienced total compensatory and liquidated damages of more than zero but less than $50. Wise Decl. ¶ 17.

Notably, the difference between the compensatory damages calculated for the two-year and three-year periods is $218,101.46. Wise Decl. ¶ 16. This figure doubles to $436,202.91 when liquidated damages are taken into account. Plaintiffs' expert also found that 375 collective members were damaged during the three-year statutory period but not the two-year period. Wise Decl. ¶ 16.

Counsel for both sides seem to have been diligent in pursuit of settlement. Plaintiffs faced a significant amount of uncertainty if they were to go forward with this litigation due to the disputed nature of the legal issues. The parties employed a mediator, the Honorable Peter

---

[6] Although the Motion and supporting declaration represents that the highest award is $4,812.21, Mot. at 18, Wise Decl. ¶ 20, the Pro Rata Worksheet indicates the highest award is actually $5,412.21.

Lichtman (Ret.), to assist in the negotiation of their settlement agreement and have agreed upon on terms based on the strengths and weaknesses of this case.  The terms of the settlement provide for a modest recovery for the collective members, with individualized calculations based on the amount of overtime worked.  The damages estimates and proposed pro rata distribution accounts for liquidated damages as required by 29 U.S.C. § 216(b) for FLSA violations.  *See, e.g.*, *Haro v. City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir.), *cert. denied*, 135 S. Ct. 138 (2014).  Although the court still has reservations about the absence of a minimum settlement amount, *see, e.g.*, *Murillo*, 266 F.R.D. at 478 (approving a proposed settlement no greater than $450,000 and no less than $200,000), there is no evidence of collusion and the court is satisfied that the proposed notices adequately inform the collective members of their alternatives to settlement.  On balance, the circumstances and attendant risks in this case favor the Proposed Settlement.

### 3.   <u>Release of Claims</u>

The Proposed Settlement proposes two broad releases.  For the Rounding Collective, the "Released Rounding Claims" are defined as follows:

> all claims, debts, liabilities, demands, obligations, damages, actions or causes of action asserted in the Action under the FLSA, 29 U.S.C. § 201 *et seq.*, for unpaid overtime wages, liquidated damages, costs, attorneys' fees and all other forms of legal or equitable relief available under the FLSA arising out of or related to Defendant's practice of rounding employee time to the nearest quarter hour.

Proposed Settlement ¶ 2.41.  For the Off-the-Clock Collective, the "Released Wage and Hour Claims" are defined as:

> all claims, debts, liabilities, demands, obligations, damages, actions or causes of action for unpaid regular wages, unpaid overtime wages, unpaid wages for off-the-clock work, meal and rest break pay, liquidated damages, penalties, interest, costs and attorneys' fees arising under or related to federal or Nevada state wage and hour laws, including (without limitation) 29 U.S.C. §§ 207 and 216 and [NRS] sections 608.016, 608.018, 608.019, 608.020, 608.030, 608.040, 608.050, 608.080, 608.100, 608.115, 608.160 and 608.190, to the extent these statutes relate to federal or state wage and hour claims.

*Id.* ¶ 2.42.  The Proposed Settlement further states that settling Plaintiffs and Opt-in Plaintiffs shall be enjoined from filing any actions or complaints regarding the Released Rounding Claims or Released Wage and Hour Claims "with any state agency, including without limitation the

Nevada Office of the Labor Commissioner, or the United States Department of Labor Wage and Hour Division." *Id*. ¶ 5.3.

The Motion asserts that the releases are narrowly tailored to the claims alleged in this case. "Plaintiffs who worked outside Nevada will only release FLSA rounding claims…. Plaintiffs who worked in Nevada waive both federal and Nevada wage and hour claims." Mot. at 27:20–22. The Motion states that the releases are not general as they are limited to the claims at issue and the causes of action Plaintiffs have alleged. Additionally, "Plaintiffs can always choose not to join the settlement if they believe the release is not worth the reward." *Id*. at 28:5–6.

Now that the complete damages information is before the court, the propriety of the proposed releases can be assessed. The court finds that the proposed releases appropriately track Plaintiffs' allegations in the action and the judicial ruling that narrowed their claims. *See* Order (ECF No. 92). The Proposed Settlement does not release unrelated claims that collective members may have against Defendant. Accordingly, the proposed releases are not overly broad.

### 4.   <u>Confidentiality Provision</u>

The weight of authority holds that the FLSA does not support confidentiality provisions in settlement agreements. To further Congressional intent of "private—public" rights under the FLSA, numerous courts have determined that confidentiality provisions in FLSA settlement agreements do not further resolution of a bona fide dispute between the parties. *See e.g.*, *Dees*, 706 F. Supp. 2d at 1242 (discussing the FLSA's requirement that employers display a detailed notice of employee rights); *Briggins*, 3 F. Supp. 3d at 1289–90. "By including a confidentiality provision, the employer thwarts the informational objective of the notice requirement by silencing the employee who has vindicated a disputed FLSA right." *Dees*, 706 F. Supp. 2d at 1242.

Acknowledging the unequal bargaining power between employers and employees, the FLSA rejects confidentiality provisions in settlement agreements as contrary to the statutes' terms and legislative purpose. *Id.* (quoting *Brooklyn Savings*, 324 U.S. at 706–07).

Confidentially agreements also undermine and contravene the court's role in FLSA collective actions:

> An employer who pays less than the minimum wage or who pays no overtime has no incremental incentive to comply voluntarily with the FLSA, if, after an employee complains, the employer privately compromises the claim for a discount-an amount less than the full amount owed under the FLSA (plus, with savvy negotiation, a confidentiality agreement to preclude the spread to other employees of information about the FLSA).

*Dees*, 706 F. Supp. 2d at 1237.   Conversely, when judicial approval is required and confidentially provisions are rejected, "the discount might become unavailable and the undiscounted principal owed the employee might increase (for example, as a result of liquidated damages or a more refined damage computation)," and both of these prospects encourage voluntary compliance and support the Department of Labor's regulatory effort to notify employees of their FLSA rights.  *Id.*

Accordingly, a district court "should reject as unreasonable a compromise that contains a confidentiality provision, which is unenforceable and operates in contravention of the FLSA." *Id.* at 1242–43.

Here, the parties initially agreed upon a confidentiality provision titled "No Press Releases/Public Comment," which restricted the collective members from discussing the settlement except with Defendant's express written consent.  Proposed Settlement ¶ 6.5; *see also* ¶ 6.15 (stating that the court shall retain jurisdiction to enforce the terms of the agreement).  In its ruling on the previous motion, the court stated that it "will not approve the proposed settlement with this confidentiality provision in it."  Order (ECF No. 247) at 14:11–13.  In the renewed Motion, Plaintiffs inform the court that they have modified this "publication provision" as follows:

> **No Press Releases/Public Comment**.  Unless they first obtain Defendant's express written consent, Plaintiffs' Counsel ~~and Plaintiffs~~ shall not (a) discuss, reveal, disclose, publicize or promote the fact or terms of this Settlement, or the negotiations leading to this Settlement, to ~~any third party (including but not limited to~~ the media, the legal community or the public at large), or (b) issue any press releases or initiate any contact with the press regarding the Settlement, or otherwise advertise or publicize the Settlement.  ~~Nothing in this Agreement is intended to prevent Plaintiffs or Plaintiffs' Counsel from disclosing or discussing the terms of this Settlement (i) with the Court, (ii) with each other, (iii) with the settlement administrator (if any), (iv) with Plaintiffs' spouse, tax preparer, or~~

1

2

~~financial advisor or (v) as otherwise required by law.  Defendant shall share the~~
~~details of this Settlement on a need-to-know basis only.~~

3    *See* Addendum (ECF No. 250-2) at 33–36.  The Addendum also agrees to remove the provisions

4    in the Notice of Settlement and Release form that discuss the previous confidentiality provision.

5    *Compare* Notice of Settlement (ECF No. 250-7) *with* (ECF No. 245-7), Release (ECF No. 250-8)

6    *with* (ECF No. 245-8).

7           Plaintiffs assert that the changes and deletions reflected in the Addendum alleviate the

8    court's concerns that the "publication provision" would effectively function as a confidentiality

9    provision and prevent the collective members from disclosing the settlement terms to the more

10   than 25,000 employees who did not opt-in to this collective action.  Mot. at 28 (citing Order

11   (ECF No. 247) at 12–14).  "These revisions make clear that Defendant seeks to restrict Plaintiffs'

12   *counsel*'s general publication of the Settlement.  Defendant does not seek to bind Plaintiffs to

13   confidentiality; they are free to discuss the Settlement with their co-workers."  *Id*. at 28:10–13.

14   Based on these changes, Plaintiffs will not be liable for a breach of contract if they discuss this

15   case with their coworkers.  Plaintiffs point out that Defendant has not asked the court to seal the

16   settlement or related motion practice from the public, but "simply seeks to minimize negative

17   press that may be associated with settling a lawsuit."  *Id*. at 28:14–15.  The court finds that the

18   revisions set forth in the Addendum are acceptable and do not run afoul of the principles that

19   prohibit confidentiality provisions in FLSA settlements.

20                        **5.    Attorney's Fees and Litigation Costs**

21          The FLSA provides for settlement agreements to include an award of reasonable fees.  29

22   U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the

23   plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of

24   the action").  In the context of a collective action, a court must determine the reasonableness of

25   attorneys' fees to minimize conflicts that may arise between the plaintiffs and their counsel.

26   *Goldsby*, 294 F.R.D. at 655.  A district court must be sure that the settlement agreement and

27   release has not been tainted by any conflict of interest regarding the agreed upon attorneys' fees.

28   *Id.*  The amount of attorneys' fees and costs allocated in an FLSA settlement should, therefore,

be separately reached and without regard to the settlement amount paid to plaintiffs. *Id.*; *see also Dees*, 706 F. Supp. 2d at 1243. Additionally, even when attorneys' fees and expenses are negotiated separately from the amount paid to FLSA plaintiffs, a court still must determine the reasonableness of those fees and expenses by considering "the number of hours reasonably expended on the litigation, together with the customary hourly rate for similar legal services." *Goldsby*, 294 F.R.D. at 655 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *Wright v. Linkus Enterprises, Inc.*, 259 F.R.D. 468, 476 (E.D. Cal. 2009) (when determining attorneys' fees in FLSA common fund cases, district courts in the Ninth Circuit should "be guided by the fundamental principle that fee awards out of common funds be *'reasonable under the circumstances'*.") (citing *Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.)*, 19 F.3d 1291, 1296 (9th Cir. 1994)).

"[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). "This rule, known as the 'common fund doctrine,' is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008); *see also In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The common fund doctrine "ensures that each member of the winning party contributes proportionately to the payment of attorneys' fees." *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003). In common fund cases, district courts have the discretion to calculate fees by either calculating a lodestar or awarding a percentage of the common fund. *Id.* at 968 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). "The lodestar method, multiplying the number of reasonable hours worked by a reasonable rate, may also be used as a

cross-check on the reasonableness of fees awarded through a percentage method." *Wright*, 259 F.R.D. at 476 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050–51 (9th Cir. 2002)).[7]

An award of 25% in attorneys' fees to be paid from a settlement fund represents a "benchmark" percentage for fee awards from a common fund. *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). However, the Ninth Circuit has cautioned that the district court should not calculate fees using "a mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944. The ultimate amount must be supported by findings that take into account all of the circumstances of the case, including the result achieved, the risk involved in the litigation, the skill required and quality of work by counsel, the contingent nature of the fee, awards made in similar cases, and the lodestar crosscheck. *Vizcaino*, 290 F.3d at 1048–50.

Here, the Proposed Settlement provides for a $450,000 common fund. The parties have agreed to allocate 25% or $112,500 of the maximum settlement amount to Plaintiffs' attorneys' fees. Using the percentage-of-recovery method, this amount mirrors the benchmark set by the Ninth Circuit. The Motion further asserts that this amount is reasonable because it is far less than the actual fees and costs incurred, which exceed $630,000 in fees for the Nichols Kaster, PLLP firm alone. *See* Nichols Kaster Fee Summary (ECF No. 250-17) (attached as Mot. Ex. J) at 3.[8] The Motion further indicates that the Proposed Settlement is not contingent on a ruling in favor of Plaintiffs' counsels' fee request. Mot. at 24 (citing Proposed Settlement ¶ 3.4 ("Any award by the Court of attorneys' fees . . . that is less than the amount applied for will not be grounds for Plaintiffs or Plaintiffs' Counsel to challenge or withdraw from the Settlement.")). Plaintiffs' counsel has provided detailed billing summaries and attorney declarations in support of the fee request. *See* Nichols Kaster Fee Summary; Fisher Decl. ¶¶ 42–70; Decl. of Jamie S.

---

[7] *See also* LR 54-14 (incorporating the relevant factors for determining the reasonableness of an attorney fee award based on the lodestar method); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975)).

[8] The court notes that the fees summarized by Nichols Kaster include numerous administrative staff members whose billing rates are not properly awarded as attorneys' fees. *See Missouri v. Jenkins*, 491 U.S. 247, 288 n.10 (1989) (finding that hours expended on clerical tasks are generally considered overhead expenses, which are already reflected in an attorney's hourly rate). This accounts for over $100,000 of Nichols Kaster's fees. *See* Nichols Kaster Fee Summary at 3.

1    Cogburn (ECF No. 250-22); Decl. of Rebekah Bailey (ECF No. 250-24).  The court finds this

2    documentation adequate support in favor the fee request.

3          With regard to litigation expenses, there is "no doubt that an attorney who has created a

4    common fund for the benefit of the class is entitled to reimbursement of reasonable litigation

5    expenses from that fund."  *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (citations

6    omitted); *see also* 29 U.S.C. § 216(b).  In this case, the parties have agreed that $130,000 of the

7    maximum settlement amount will be allocated to satisfy the collectives' litigation costs and

8    expenses.  Mot. at 23.  To date, Plaintiffs' counsel has expended over $130,000, "with the bulk

9    of the costs attributable to dissemination of collective action notice (16%), expert fees (40%),

10   and depositions (27%)."  *Id.* at 23:12–14 (citing Fisher Decl. ¶ 44).  Additionally, Plaintiffs'

11   counsel anticipates spending additional sums that will not be recouped for disseminating notice

12   of a settlement and the settlement checks, re-mailing notice and checks, and to tending to any

13   other requirements of the settlement process.  *See* Itemization of Costs (ECF No. 245-16)

14   (submitted as Mot. Ex. I).  The court finds the costs requested to be reasonable and adequately

15   documented.

16                    **6.       Service Payments to Named Plaintiffs**

17         The Ninth Circuit has recognized that class representatives are entitled to some

18   compensation for the expense he or she incurs on behalf of the class.  *See, e.g.*, *Staton v. Boeing*

19   *Co.*, 327 F.3d 938, 976–77 (9th Cir. 2003) (finding that named plaintiffs are eligible for

20   reasonable incentive payments).  To determine whether a service payment is reasonable, the

21   district court must evaluate awards individually, using relevant factors including: (1) the actions

22   the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has

23   benefitted from those actions, (3) the amount of time and effort the plaintiff expended in

24   pursuing the litigation, and (4) reasonable fears of workplace retaliation."  *Id.* at 977 (quoting

25   *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

26         Here, the parties agreed to set aside a "Service Award" in an amount not to exceed $500

27   for each of the five Plaintiffs in recognition of their service to the collective.  Proposed

28   Settlement ¶ 3.3.  Additionally, the parties agreed to a $100 Service Award for each of the 23

Plaintiffs and Opt-in Plaintiffs deposed by Defendant. *Id*. The Service Awards are in addition to their pro rata allocations. *Id*. ¶ 2.46. The court finds that the proposed awards are reasonable and they will not significantly reduce the amount of settlement funds available to the rest of the collective. Given the Plaintiffs and Opt-in Plaintiffs' time and efforts undergoing lengthy depositions and responding to written discovery requests, these incentive awards appropriately compensate them for their time and reward them for their service to the collective.

### 7.  Notice to the Collectives

In the context of class action notice, the Ninth Circuit has found notice is satisfactory if it generally describes the settlement's terms in sufficient detail to alert those with objections to investigate and to come forward and be heard. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

After the initial Notice was circulated in this case, approximately 2,632 persons submitted consents to join this action and the parties agree that 2,158 of those qualify for inclusion in the Collectives. Fisher Decl. ¶¶ 11–12. Plaintiffs request an order allowing distribution of two notices by mail within seven days of the court's order approving the Motion. *See* Persons Receiving Notice of Dismissal (ECF No. 250-4) (submitted as Mot. Ex. A-2); Notice of Dismissal (ECF No. 250-5) (submitted as Mot. Ex. A-3); Persons Receiving Notice of Settlement (ECF No. 250-6) (submitted as Mot. Ex. A-4); Notice of Settlement (ECF No. 250-7) (submitted as Mot. Ex. A-5)[9]; Consent to Settlement and Release of Claims (ECF No. 250-8) (submitted as Mot. Ex. A-6).

The Motion indicates there are 461 persons for whom the expert calculated no damages during the relevant time period according to Defendant's records. *See* Fisher Decl. ¶ 29. The parties have agreed to dismiss these persons without prejudice. Proposed Settlement ¶ 4.2.1; Persons Receiving Notice of Dismissal (ECF No. 250-4); Notice of Dismissal (ECF No. 250-5). The court finds that the proposed Notice of Dismissal adequately explains the cause for dismissal

---

[9]  The court notes that the numbered paragraph headings have some formatting issue as they do not display correctly in the revised version. *Compare* Notice of Settlement (ECF No. 250-7) *with* (ECF No. 245-7). Counsel should correct the formatting error prior to dispatching the notice.

and advises these individuals to swiftly seek legal counsel should they believe they have actionable claims against Defendant.  The Proposed Notice of Dismissal is acceptable in its current form.

The Named Plaintiffs and Opt-In Plaintiffs who will receive settlement offers are identified in the list entitled Persons Receiving Notice of Settlement (ECF No. 250-6).  The court finds that the Proposed Notice of Settlement adequately explains the options available to collective members as it provides a summary of the settlement's terms, including each Plaintiff's and Opt-in Plaintiff's individual allocation, the scope of the release, procedure and time period for agreeing to the settlement if they so choose, their rights if they choose not to consent or opt-in to the settlement, and a statement that the court has preliminarily approved the settlement.  The Motion proposes a 60-day opt-in period from the mailing of the notice and consent.  In general, the form of the proposed Notice of Settlement and Consent to Settlement and Release of Claims is acceptable, except as described in this Order.

Based on the foregoing,

**IT IS ORDERED:** Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (ECF No. 250) is **GRANTED** as follows:

1. The Proposed Settlement is preliminarily declared fair and reasonable;

2. The form, manner, and content of the Notice Dismissal Notice of Dismissal (ECF No. 250-5) (submitted as Mot. Ex. A-3 and described in the Proposed Settlement ¶ 4.2.1) and Notice of Settlement (ECF No. 250-7) (submitted as Mot. Ex. A-5 and described in the Proposed Settlement ¶ 4.2.2) are approved.

3. Plaintiffs shall distribute the Notice of Dismissal and the Notice of Settlement no later than seven (7) days from the date of this Order preliminarily approving the settlement;

4. The Acceptance Period Deadline shall be 60 days from the initial mailing of the Notice of Settlement;

5. Plaintiffs shall file their Motion for Final Approval of the Settlement within 21 days after the Acceptance Period Deadline; and

1    6.  All other proceedings in this matter are stayed pending consideration of final

2        approval.

3    DATED this 11th day of July, 2016.

4

5    _____
     PEGGY A. LEEN

6    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28